SHARON A. URIAS (SBN 016970)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ  85255
Tel.  602.726.0711
Fax  480.306.5459
Email:  sharon.urias@gmlaw.com
           azdocket@gmlaw.com

JEFFREY A. BACKMAN (admitted *pro hac vice*)
ROY TAUB (admitted *pro hac vice*)
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel.  954.491.1120
Fax  954.213.0140
Email:  jeffrey.backman@gmlaw.com
           roy.taub@gmlaw.com
           khia.joseph@gmlaw.com
           cheryl.cochran@gmlaw.com

*Attorneys for Defendant Grand Caribbean Cruises, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Winters, Jr. Joseph Brem, and David James, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>Grand Caribbean Cruises Incorporated,<br><br>               Defendant. | No. 2:20-cv-00168-DWL<br><br>**DEFENDANT'S MOTION TO DISMISS** |

Defendant Grand Caribbean Cruises, Inc. ("GCC") hereby moves, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiffs Richard Winters, Jr., Joseph Brem, and David James's Second Amended Complaint (the "SAC") with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiffs' SAC is strung together by a series of conclusory assertions of various violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") by an unspecified and conglomerated "Defendant" – a term defined to include not only GCC, but also its purported "agents" – a pleading shortcut that cannot be credited. Virtually all of the allegations of misconduct are attributed to "Defendant" or, even more confusingly, in a few instances, "Defendant's agents." Nothing in the SAC plausibly suggests that GCC placed any calls to the three Plaintiffs – submitted testimony establishes that it did not – or that it can be held liable for the different types of alleged telephone calls under any common law agency principles. Plaintiffs make the remarkable accusations that GCC not only directly placed the telephone calls, but it also had agents place those same telephone calls, and, if that was not already sufficiently self-contradictory, GCC "was likewise acting as an agent of the" callers – despite also being their principal – and it is therefore "similarly vicariously liable for the conduct of" those callers, confusingly, as *their* agent. To put it mildly, that is implausible.

But, first, there are numerous personal jurisdiction problems with the SAC as pleaded. GCC is a Florida corporation with a principal place of business in Florida, so it is not within this Court's general jurisdiction. Plaintiffs must instead rely upon specific personal jurisdiction. Yet, Plaintiff David James is not an Arizona resident, and he complains about telephone calls he claims to have received on his residential landline in California. His claims have no connection to this forum, and thus the Court lacks personal jurisdiction over them. The same is true with the claims of the non-Arizona putative class members, and they, too, should be dismissed. And specific jurisdiction is lacking for the remaining Plaintiffs, Richard Winters, Jr. and Joseph Brem, because nothing in the SAC plausibly suggests a *prima facie* showing that the Court has specific jurisdiction over GCC given the failure to plausibly allege

direct liability or vicarious liability (nor can Plaintiffs overcome the record evidence).

Even if there were personal jurisdiction, the SAC still fails to allege facts sufficient to state a plausible claim against GCC. Again, the SAC is devoid of any well-pleaded facts that would permit a plausible inference that GCC made the telephone calls at issue or authorized and controlled an agent to place telephone calls in violation of the TCPA, as opposed to hiring a contractor (or that contractor itself hired a contractor without GCC's knowledge). The SAC also fails to state facts sufficient to plausibly suggest use of an ATDS or a prerecorded voice (separate violations) to all three Plaintiffs. There are also yet additional pleading deficiencies that preclude Winters from stating a violation of the TCPA's "do-not-call" rules, and none of the Plaintiffs alleges facts sufficient to plausibly state GCC – as opposed to anyone else included in the "catch-all" definition of "Defendant" – knowingly or willfully, as opposed to negligently, violated the TCPA. All of Plaintiffs' claims should be dismissed.

## STATEMENT OF ALLEGED SACTS

Plaintiffs each claim that they received telephone calls from "Defendant" – a term defined to include not only GCC, but "their [sic] subsidiaries and agents," (SAC at ¶ 9) – in violation of the TCPA. All three Plaintiffs allege that "Defendant used an 'automatic telephone dialing system' as defined by 47 U.S.C. § 227(a)(1) to place its call to" them. *Id.* at ¶¶ 12, 4\*, 18\*.[1] Brem and James also allege that the telephone calls used a "prerecorded voice." *Id.* at ¶¶ 6\* & 19\*. Winters and James claim the telephone calls they received violated the TCPA's "do-not-call" rules, although Winters registered his telephone number on the National Do-Not-Call Registry ("NDNCR") no earlier **than the month before** the call (or calls, it is unclear) he allegedly received. *Id.* at ¶ 19.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*

---

[1] The SAC restarts the numbering of paragraphs after Paragraph 24. To facilitate the Court's review, those latter paragraphs are referred to with an asterisk.

*v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). *See also Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). A "nonspecific conclusory statement is not enough" to satisfy that burden. *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). "[P]laintiff cannot simply rest on the bare allegations of its complaint," but must make at least "a *prima facie* showing of jurisdictional facts" to avoid dismissal under Federal Rule of Civil Procedure 12(b)(2). *Schwarzenegger*, 374 F.3d at 800. The Court may consider written materials in deciding the motion. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). The law of the forum state applies. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). Because "the jurisdictional limit of [Arizona's] long-arm statute is coextensive with that of the United States Constitution," "the Court need only determine whether exercising personal jurisdiction here would comport with federal due process." *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. CV-19-04854-PHX-DWL, 2020 WL 4039119, *3 (D. Ariz. July 17, 2020).

"[T]o survive a motion to dismiss" under Rule 12(b)(6), "a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## II. THE COURT LACKS PERSONAL JURISDICTION OVER GCC

### A. The Court Lacks General Personal Jurisdiction

General jurisdiction allows a court to hear any claim against a defendant, irrespective of the underlying claim's connection to the forum state, and applies when a defendant's

"affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation omitted). The Supreme Court has clarified the limited bases that would permit general jurisdiction:

> [O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotations and modifications omitted).

None of these applies here. Plaintiffs concede that GCC is "a Florida resident." SAC at ¶ 2. More specifically, GCC was incorporated under the laws of the State of Florida, has its principal place of business in Florida, and lacks any significant contacts with Arizona that could possibly otherwise give rise to general jurisdiction. *See* Declaration of Jennifer Poole at ¶¶ 2-14. Accordingly, this Court has no general personal jurisdiction over GCC.

### B. The Court Lacks Specific Personal Jurisdiction

Specific jurisdiction permits a court to hear a particular case that arises out of or relates to the defendant's contacts with the forum. *Daimler*, 571 U.S. at 127. It has three elements:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. None exists here.

#### 1. There Is No Specific Personal Jurisdiction over James's Claims

First, the Court lacks personal jurisdiction over James's claims. He lives in California

and received the telephone calls he complains about in California, as he claims they were to his landline telephone number. *See* SAC at ¶¶ 7, 15\*. Specific personal jurisdiction, however, requires that there "must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). "[T]he overwhelming majority of federal courts that have considered it, . . . have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions," such as James. *Goldstein v. Gen. Motors LLC*, No. 3:19-CV-01778-H-AHG, 2020 WL 1849659, \*4 (S.D. Cal. Apr. 13, 2020). James therefore lacks the necessary "connection between the forum and the specific claims at issue." *Bristol-Myers*, 137 S. Ct. at 1781.

### 2. There Is No Specific Personal Jurisdiction over Non-Arizona Claims

The Court also lacks specific personal jurisdiction over non-Arizona class members, on whose behalf Plaintiffs seek to assert TCPA claims by nationwide classes. There is no connection between Arizona and the individual TCPA claims of non-Arizona putative class members. Those putative class members' claims would wholly rely on conduct and claimed injuries that took place outside the State of Arizona and with no connection to it. Consistent with the ruling in *Bristol-Myers*, the mere fact that some Arizona resident plaintiffs allege receipt of telephone calls in violation of the TCPA "does not allow the State to assert specific jurisdiction over the nonresidents' claims." 137 S. Ct. at 1781.

Although *Bristol-Myers* did not concern a Rule 23 class action, and the Supreme Court and Ninth Circuit have yet to decide this issue, this Court should join others that have found the Supreme Court's analysis of specific personal jurisdiction applies to Rule 23 class actions as well. One court in the Ninth Circuit recently explained, based upon a review of the case law, that "the rationale for the holding in *Bristol-Myers Squibb* indicates that if and when the Supreme Court is presented with the question, it will also hold that a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims." *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020). Similarly, another

court in this District explained its transfer of a putative class action by observing, given *Bristol-Myers*, that "it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class." *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, *4 n.4 (D. Ariz. Oct. 2, 2017). The same is true here. The Court lacks personal jurisdiction over the claims of non-Arizona putative class members, and must dismiss those claims, too.

### 3. No Specific Personal Jurisdiction over GCC

It is black letter law that the "'minimum contacts' necessary to create specific jurisdiction . . . . must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (collecting cases). There are, however, no such jurisdictional contacts between GCC and Arizona.

"For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)). The same level of allegations sufficient to state liability under an agency theory are required to show personal jurisdiction on that basis. *See Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *13 (N.D. Cal. Dec. 4, 2017) ("*TranzVia*") ("[H]aving failed to adequately plead liability based on agency, plaintiff cannot show that the court has personal jurisdiction over TranzVia on that basis.").

GCC did not place or make any telephone calls to the Plaintiffs, including Winters and Brem in Arizona. *See* Poole Decl. at ¶ 15. And the SAC is devoid of any factual allegations from which the Court could infer that GCC made the calls. Rather, Plaintiffs generally allege that "**Defendant**," a term that is defined to mean GCC and its "subsidiaries and agents," (SAC at ¶ 9), called them. That definition is nothing more than an impermissible "catch-all"

formulation that fails to assert any well-pleaded fact beyond the speculative level as to GCC specifically and distinct from an "agent." Are Plaintiffs claiming GCC made the calls? A subsidiary? Or an agent of GCC or a subsidiary? All are possible interpretations, especially with the new "all of the above" allegations that "Defendant is directly liable for placing the call[s] and in the alternative, that Defendant is vicariously liable for the call[s] . . . through an agency-principle [sic] relationship," and also that "Defendant was likewise acting as an agent of the initial caller." SAC at ¶¶ 12-13, 2*-3*, 16*-17*. No one can tell.

Far more detail is required. Without any well-pleaded allegations that GCC itself made the calls, each Plaintiff is required to "show[ ] that [his caller] is subject to this court's jurisdiction, and that [the caller's] actions are attributable to [GCC] because [the caller] was [GCC's] agent with respect to the calls that [the caller] allegedly made to plaintiff." *TranzVia*, 2017 WL 5992123 at *10. That is because "[i]t is only when the acts of an agent can be imputed to the principal that the court can exercise personal jurisdiction over the principal for those acts." *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 414 (9th Cir. 1977) ("The Court's jurisdiction over an agent imputes to the principal when the agent's conduct, on behalf of the principal, gives rise to the cause of action.")). But the SAC is entirely devoid of well-pleaded facts sufficient to plausibly state an agency relationship between GCC and the unidentified "agents" who allegedly called Plaintiffs so as to permit imputation of jurisdictional contacts.

The Ninth Circuit has recognized that the TCPA "incorporate[s] federal common law agency principles of vicarious liability . . . ." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013)). *See also Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) ("A defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it."). These common law agency principles "includ[e] not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 F.C.C. Rcd. at 6584. *See also Abante*, 2018 WL 288055 at *4 (same).

There is nothing in the SAC that comes close to plausibly stating an agency

relationship, as opposed to a standard contractor relationship, under any of these principles. With respect to formal or actual agency, "[a]n agent is one who 'act[s] on the principal's behalf and subject to the principal's control.'" *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) (quoting *Restatement (Third) of Agency* § 1.01 (2006)). "Generally, an individual acting as an 'independent contractor,' rather than an agent, does not have the traditional agency relationship with the principal necessary for vicarious liability." *TranzVia*, 2017 WL 5992123 at *12. The SAC states no facts suggesting that GCC "controlled or had the right to control [the purported agents] and, more specifically, the manner and means of the [marketing] . . . they conducted," which is necessary for actual agency. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014). Rather, as in *Abante*,

> [t]he complaint contains no factual allegations about defendant's relationship with the purported callers, much less factual allegations about what control defendant exercised over the callers. To state a plausible claim based on actual authority, plaintiff must allege facts showing that defendant had the right to control the representatives and the manner and the means of the calls they made.

2018 WL 288055 at *5. *See also Rogers v. Postmates Inc.*, No. 19-cv-05619, 2020 WL 3869191, *4 (N.D. Cal. July 9, 2020) ("*Rogers II*") (same).

Plaintiffs base "express authority" upon the allegation that the calls made – presumably by someone other than GCC, although, as noted, Plaintiffs' take an "all of the above" approach and also claim GCC made the calls – were "transferred to a representative who identified [GCC] by name and was clearly made for the benefit of Defendant," (SAC at ¶¶ 11, 1*, 15*. That is insufficient. "It is not enough that each representative identified him or herself as acting on behalf of [GCC]. Such allegations say nothing about whether defendant consented to those representations. And, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the representatives." *Abante*, 2018 WL 288055 at *5. *See also Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020) (same); *Rogers II*, 2020 WL 3869191 at *5 (finding allegations that company sent text messages on behalf of another

failed to plausibly allege agency, as opposed to beneficial contractual relationship).

Moreover, as the specific jurisdictional contacts must provide the basis for actual agency for purposes of a TCPA claim, Plaintiffs "must do more than establish an agency relationship. They must also establish that the purported agent had actual authority to place the unlawful calls," *i.e.*, to place a telephone call using an ATDS or pre-recorded voice or in violation of the "do-not-call" rules. *Jones*, 887 F.3d at 449.[2] The SAC is devoid of any well-pleaded facts sufficient to render any such contention plausible. And, given GCC's sworn testimony that it "never authorized any third party to place or initiate a telephone call to any of the Plaintiffs that would violate the [TCPA]," and instead "requires that all such companies who seek to contract with Grand Caribbean represent and agree that their marketing activities will be in compliance with all applicable federal and state laws, including the TCPA," (Poole Decl. at ¶ 16), Plaintiffs cannot point to anything to the contrary.[3]

The SAC instead rests upon conclusory and implausible allegations, such as that "each and every Defendant – *i.e.*, GCC and all its "agents" – was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants"

---

[2] *See also Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 4220075, *1 (D. Ariz. July 23, 2020) ("[E]ven assuming Mr. Berube's actions could be attributed to Mr. Stark, Plaintiff has not shown that Mr. Stark can be held liable for TCPA violations because Plaintiff does not allege that Mr. Berube directed agents use an autodialer in any way that violates the TCPA."); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 1032153, *4 (N.D. Cal. Mar. 3, 2020) ("*Rogers I*") ("[E]ven if the sender was authorized to market on Postmates' behalf, there are no factual allegations suggesting that Postmates knew or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf.").

[3] *Accord Jones*, 887 F.3d at 449 (explaining contractual prohibition of "any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling,'" precluded finding of authority to place telephone calls in violation of the TCPA); *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077, *1 (N.D. Cal. Dec. 19, 2019) ("*Abante II*") ("Abante doesn't contend that Arashi actually granted DTX the authority to use an ATDS or to call merchants on the Do-Not-Call Registry. And for good reason: Arashi presented unrebutted evidence that DTX 'repeatedly represented that its services were compliant with the TCPA.'").

and, for good measure, "each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants." SAC at ¶ 10. This is yet another "catch-all." Both that very same language and similar formulations have been repeatedly rejected as legal conclusions unsupported by any facts and thus are not credited. *See*, *e.g.*, *Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (rejecting identical allegation because it is "wholly conclusory, and Plaintiff fails to plead any facts in support").[4]

Additional conclusory allegations that "Defendant" – presumably GCC – "is vicariously liable for the call[s] . . . through an agency-principle [sic] relationship, as well as through apparent authority and ratification," (SAC at ¶¶ 12, 2*, 16*), are equally deficient. And the conclusory allegations that the callers were GCC's agents are fatally contradicted, and further rendered implausible, by the simultaneous allegations that "Defendant was likewise acting as an agent of the initial caller . . . and is similarly vicariously liable for the conduct of Defendant" – presumably here not GCC? – under a direct agency theory, apparent authority, and ratification." *Id.* at ¶¶ 13, 3*, 17*. How can Plaintiffs plausibly allege GCC has direct liability as the caller, vicarious liability for calls made by its agents, and ***also*** liability as the same callers' agent? This triadic notion of liability makes no sense, has no basis in the law, and precludes any plausible assertion of an agency relationship.

Nor does the SAC contain any well-pleaded facts sufficient to permit a plausible inference of agency by apparent authority or ratification. "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as

---

[4] *See also*, *e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017); *Pallamary v. Elite Show Servs., Inc.*, No. 17CV2010-WQH-BGS, 2018 WL 3064933, *14 (S.D. Cal. June 19, 2018); *Luis v. Walker v. Ditech Fin. LLC*, No. 16-CV-03084-KAW, 2016 WL 5846986, *4 (N.D. Cal. Oct. 6, 2016); *Emazing Lights, LLC v. De Oca*, No. SACV 15-1561-AG(EX), 2016 WL 7507765, *3 (C.D. Cal. June 20, 2016); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, *3 (S.D. Cal. June 13, 2013); *Mindlab Media, LLC. v. LWRC Int'l LLC*, No. CV 11-3405 CAS FEMX, 2012 WL 386695, *4 (C.D. Cal. Feb. 6, 2012); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1084 (N.D. Cal. 2011); *Barba v. Seung Heun Lee*, No. 09-1115-PHX-SRB, 2010 WL 11515658, *8 (D. Ariz. Aug. 25, 2010).

an agent when that belief is reasonable and is traceable to a manifestation of the principal." *TranzVia*, 2017 WL 5992123 at *12 (quoting *Restatement (Third) of Agency* § 2.03, cmt. c). "[T]he ostensible authority of an agent cannot be based solely upon the agent's conduct." C.*A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc*., 213 F.3d 474, 480 (9th Cir. 2000). While the SAC contains conclusory assertions, it lacks any well-pleaded allegations of conduct by GCC sufficient to render plausible that any belief by any Plaintiff that GCC authorized any callers to place telephone calls in violation of the TCPA as its agent, as opposed to an independent contractor relationship, is reasonable.[5]

Thus, the allegations that Plaintiffs were transferred on calls made by others to GCC remain insufficient to plausibly state apparent authority. It is black letter law that "[t]he fact that one party performs a service that facilitates the other's business does not constitute such a manifestation [of assent to action by the agent with legal consequences for the principal]." *Restatement (Third) Of Agency* § 3.03. "For example, by clearing securities trades for another firm, a securities broker does not make a manifestation to customers of the firm sending the orders that it acts with the authority of the clearing firm." *Id.* The same is true with transferring calls. Plaintiffs thus have not alleged any facts that raise the claim of an agency relationship beyond the speculative level. At most, the SAC's allegations may suggest a relationship between the purported callers and GCC, but "the bare existence of a relationship does not indicate that [the purported callers were] authorized to act on defendant's behalf or speak to the scope of that purported authorization." *Abante*, 2018 WL 288055 at *6.

The SAC fares no better with ratification. Ratification is "the affirmance of a prior act

---

[5] *See Abante*, 2018 WL 288055 at *5-6 (rejecting as insufficient allegations that defendant's agents called on defendant's behalf and promoted defendant's brand and products because "they assume an agency relationship exists in order to show defendant made a manifestation to a third party"); *TranzVia*, 2017 WL 5992123 at *7, 12-13 (finding allegation that defendant called plaintiff after plaintiff left voicemail in response to purported agent's calls insufficient to support apparent authority); *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, *7 (N.D. Cal. June 15, 2015) (finding allegation that purported agent "stated that the intention was to refer Plaintiff to Defendant" was insufficient because it did "not show that [defendant] controlled, authorized, or even knew about [purported agent's] phone calls or that [defendant] had any control over [purported agent]").

done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting *Restatement (Third) of Agency* § 4.01(1)). "Even if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.'" *Id.* (quoting *Restatement (Third) of Agency* § 4.01, cmt. b). Thus, to allege that GCC ratified the purported callers' "allegedly improper calls, plaintiff[s] must allege facts sufficient to allow the court to reasonably infer that [GCC] knew that [a caller] violated the TCPA and that it 'knowingly' accepted the benefits of [the caller's] violation." *TranzVia*, 2017 WL 5992123 at *13. No such facts are alleged in the SAC, and instead Plaintiffs make conclusory allegations. *See* SAC at ¶¶ 11, 1*, 15*. Indeed, there is no asserted basis to believe there were any benefits – cruise ship bookings by Plaintiffs – to accept in the first place, let alone with the requisite knowledge of TCPA violations. *Accord Kristensen*, 879 F.3d at 1014-15. And Plaintiffs' complete failure to allege or establish any agency relationship is fatal to a ratification finding, because "[a]lthough a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 680 (9th Cir. 2014). *See also Kristensen*, 879 F.3d at 1015; *Abante*, 2018 WL 288055 at *6.

As Plaintiffs have failed to adequately plead any common law basis for agency, and can point to nothing to contradict GCC's sworn testimony denying any jurisdictional contacts – direct or through purported agents – Plaintiffs cannot satisfy their burden to establish personal jurisdiction, and the case should be dismissed on that basis.

**III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST GCC**

Even if Plaintiffs were somehow to establish personal jurisdiction over GCC, the SAC still should be dismissed for failure to state a claim against GCC.

**A.   Plaintiffs Fail to Allege Direct or Vicarious Liability against GCC**

For the reasons set forth in connection with the Rule 12(b)(2) motion, the SAC fails to allege facts sufficient to plausibly allege that GCC made the telephone calls at issue. *See*

Section II.B.3, *supra*. The SAC defines "Defendant" to mean not only GCC, but also its subsidiaries and agents, (SAC at ¶ 9), failing to give GCC notice of whether Plaintiffs contend GCC directly called them, especially when it appears to implausibly allege liability against GCC as (1) the direct caller, (2) the principal on whose behalf calls were made, and (3) the agent for the callers, on the view that, in addition to being GCC's agents, they somehow are also GCC's principals. The SAC further confuses things by alleging, in wholly conclusory terms that are entitled to no weight on a motion to dismiss, that two of the telephone numbers from which "Defendant" allegedly called them is, for one, "confirmed to be Defendant's number," but, for another, was "confirmed to be Defendant and/or Defendant's agent's number . . . ." *Id.* at ¶¶ 15 & 5\*. Confirmed how? And who is the "Defendant"? Plaintiffs cannot play it "fast and loose" this way in stating the alleged conduct of GCC. *See Arnett v. Seaside Transportation Servs., LLC*, No. 13-CV-01672-WHO, 2014 WL 117325, \*4 (N.D. Cal. Jan. 13, 2014) (requiring plaintiff to clarify in new pleading "the definition of 'defendant' . . . and shall throughout the complaint make clear the basis of each claim against each defendant" because "plaintiff's indeterminate and inconsistent use of 'defendants' created ambiguity" and "failed to clearly allege what conduct of each defendant was the basis for her different theories" of liability).

And as also discussed above, the SAC falls far short of stating any plausible basis for the imposition of vicarious liability against GCC under an agency theory. There is no allegation of any control or right of control over the means and manner of a purported agent's telemarketing. *See Rogers II*, 2020 WL 3869191 at \*4. "To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent." *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, \*3 (S.D. Cal. June 13, 2013). Nor are there any well-pleaded facts that "the purported agent had actual authority to place the unlawful calls," *i.e.*, to place a telephone call using an ATDS or pre-recorded voice or in violation of the "do-not-call" rules. *Jones*, 887 F.3d at 449. *See also Declements*, 2020 WL 4220075 at \*1 (dismissing TCPA claim where plaintiff failed to allege anyone "directed agents use an autodialer in any way that violates the

TCPA"); *Rogers I*, 2020 WL 1032153 at *4 (dismissing TCPA claim where "there are no factual allegations suggesting that Postmates knew or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf").

The SAC also fails to plausibly state agency – as opposed to an independent contractor relationship – under apparent authority or ratification of an agent's unauthorized acts for the reasons detailed above. All Plaintiffs offer are conclusory assertions of "agency," which are insufficient even before considering the inherently self-contradictory nature of the triadic notion of liability in the SAC (as the direct caller, the principal, and the agent). *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911 (C.D. Cal. 2011) ("Plaintiffs may not rest on legal conclusions regarding agency that are cast as factual allegations. . . . [T]hese boilerplate cross-authority/cross-agency/ratification allegations run afoul of *Twombly* and *Iqbal*, and thus, the Court strikes paragraph 86 . . . ."). As in *Panacci*, "[h]ere, the [SAC] has virtually no allegations regarding the relationship between [GCC] and [any purported agent]. Thus, absent allegations supporting direct or vicarious liability against [GCC], the claim against [GCC] must be dismissed." 2015 WL 3750112, *7 (N.D. Cal. June 15, 2015). *See also*, *e.g.*, *Rogers I*, 2020 WL 1032153 at *4 ("[N]ebulous allegations do not support a plausible inference that Postmates exercised any control over the sender of the text necessary to establish an agency relationship.").

### B. Plaintiffs Fail to Allege a TCPA Violation

Even if Plaintiffs had somehow succeeded in stating a plausible basis for holding GCC directly or vicariously liable for the telephone calls they claim to have received, they still have failed to allege a TCPA violation by the unconsented (1) use of an ATDS; (2) use of a prerecorded voice; or (3) placing of calls to persons who registered their telephone numbers on the NDNCR.

#### 1. Brem and James Fail to Allege the Use of an ATDS

The TCPA prohibits the making of a telephone call "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which as the

capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1). *See also Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019), *cert. granted in part*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020).

Originally, Plaintiffs conclusorily alleged only that "Defendant" – again, who exactly that is is never detailed – "used an 'automatic telephone dialing system' as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff . . . ." SAC at ¶¶ 14, 4*, 18*. Such an unadorned allegation of a legal conclusion without any factual support fails to plausibly state the use of an ATDS. *See Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, *4 (N.D. Cal. Mar. 24, 2016) ("This conclusory allegation that Facebook used an ATDS is not, without more, sufficient to support a claim for relief under the TCPA."); *Freidman*, 2013 WL 3026641 at *2 (similar). In the SAC, while Winters alleges facts that courts have deemed sufficient to rise beyond a speculative level the use of an ATDS, (SAC at ¶ 20), Brem and James have not. Only Brem provides any facts in support of his belief that an ATDS was used to call him, namely the caller's alleged use of a "fake or 'spoofed' number" and "a prerecorded voice." *Id.* at ¶ 5*-6*. Again, an ATDS is a particular type of equipment. Whether or not an originating telephone number is "spoofed" or the connected call uses a prerecorded voice is independent of whether an ATDS is used. A "spoofed" or "prerecorded voice" call can be made by manual dialing or a dialing system that has sufficient human intervention so as to not qualify as an ATDS, and thus such features, unlike a beep or a pause upon connection of a telephone line, are not indicative of – and do not create a plausible inference of – use of an ATDS.[6]

### 2. Plaintiffs Fail to Allege the Use of a Prerecorded Voice

The TCPA also prohibits the use of prerecorded voices in certain telephone calls without the prior express consent of the called party. *See* 47 U.S.C. §§ 227(b)(1)(A) & (B). Here, too, Plaintiffs Brem and James (but not Winters) allege the use of a prerecorded voice

---

[6] James never explains his belief that he was called on his landline by an ATDS. Even if he did, he fails to state an ATDS violation because there is no prohibition on the use of an ATDS in making calls to a residential telephone line (or landline). *See* 47 U.S.C. § 227(b)(1)(B).

in conclusory terms, without any factual amplification. *See* SAC at ¶¶ 6* ("appeared to be a prerecorded voice") & 19* ("Defendant also used a prerecorded voice"). "When a fact is itself an element of the claim, as is the case here [with use of a prerecorded voice], it is not sufficient to recite that fact verbatim without other supporting details." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012). Thus, as with allegations of use of an ATDS, the courts have held that "[i]t is not unreasonable . . . to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded . . . ." *Id.*[7] The SAC lacks any such factual allegations, and thus fails to plausibly state a TCPA claim for use of a prerecorded voice.

### 3. Winters Fails to Allege "Do-Not-Call" Violations

The TCPA also established the NDNCR, and provided a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under" Section 227(c) of the TCPA. 47 U.S.C. § 227(c)(5). The relevant regulation, 47 C.F.R. § 64.1200(c), further provides that there will be no liability for a solicitation to a registered telephone number if the caller "employ[s] a version of the [NDNCR] obtained from the administrator of the registry no more than 31 days prior to the date any call is made . . . ." 47 C.F.R. § 64.1200(c)(2)(i)(D). Thus, there is no liability under the TCPA for calling a telephone number that was registered less than 31 days before the date of the telephone call.[8]

Winters fails to state a "do-not-call" violation because he alleges that he did not register his cellular telephone number until "at least June 2019," (*id.* at ¶ 19), *i.e.*, the month

---

[7] *See also Kruskall v. Sallie Mae Servs. Inc.*, No. 15-cv-11780, 2016 WL 1056973, *3 (D. Mass. Mar. 14, 2016); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, *4 (N.D. Ohio Mar. 18, 2016); *Padilla v. Whetstone Partners, LLC*, No. 14-21079-CIV, 2014 WL 3418490, *2 (S.D. Fla. July 14, 2014); *Moore v. Online Info. Servs., Inc.*, No. 13-61167-CIV, 2014 WL 11696696, *2 (S.D. Fla. Jan. 10, 2014).

[8] That is why Plaintiffs' definition of the proposed "DNC Class" "consist[s] of all persons within the United States registered on the [NDNCR] for at least 30 days," albeit not 31 days, at the time they were called. SAC at ¶ 35*.

before the calls that allegedly took place "in or around July 2019." *Id.* at ¶ 11. As in *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-CV-00200-LB, 2016 WL 1559717, *7 (N.D. Cal. Apr. 18, 2016), dismissal is appropriate because Winters "does not provide any factual allegations or evidentiary support that his number was, during the relevant time period, on the do-not-call list."[9] While conceivable, in the absence of specific dates, it is ***not plausible*** that the 31-day "safe harbor" period in the regulations had elapsed for two or more calls.

### C. Plaintiffs Fail to Allege GCC Willfully or Knowingly Violated the TCPA

In Counts II and IV, Plaintiffs assert claims against GCC for willful and knowing violations of the TCPA pursuant to 47 U.S.C. §§ 227(b)(3)(C) & (c)(5)(C). Even if the SAC's confusing allegations about the ill-defined term "Defendant" somehow state a plausible TCPA claim against GCC, Plaintiffs have "failed to assert any facts that suggest that [GCC's] alleged TCPA violation was willful and knowing," and Counts II and IV should be dismissed. *McCullough v. Maximum Title Loans LLC*, No. CV-19-00717-PHX-JJT, 2019 WL 3933754, *3 (D. Ariz. Aug. 20, 2019).

### CONCLUSION

Plaintiffs' third attempt at stating a complaint should be their last. For the foregoing reasons, Defendant Grand Caribbean Cruises, Inc. respectfully requests that the Court enter an order dismissing Plaintiffs' Second Amended Complaint with prejudice, and granting any other relief the Court deems appropriate.

### CERTIFICATION PURSUANT TO LRCiv 12.1(c)

The undersigned hereby certifies that, in accordance with LRCiv 12.1(c), on August 25, 2020, Roy Taub, counsel for GCC, met and conferred with Ryan McBride, counsel for Plaintiffs, by e-mail and telephone and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

---

[9] The claim in *Drew* was for violation of an "internal do-not-call list," but those TCPA regulations similarly provide for a 30-day safe harbor from the date of registration for such calls. *See* 47 C.F.R. § 64.1200(d)(5). Thus, where a plaintiff alleges that he requested to have his number added to an internal "do-not-call" list and still received multiple calls thereafter, but in the same month, he fails to state a claim. *See Orsatti v. Quicken Loans, Inc.*, No. 215CV09380SVWAGR, 2016 WL 7650574, *7 (C.D. Cal. Sept. 12, 2016).

DATED: August 26, 2020              Respectfully Submitted,

GREENSPOON MARDER LLP

Sharon A. Urias (SBN 016970)
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ  85255
Tel.  602.726.0711
Fax  480.306.5459
sharon.urias@gmlaw.com
azdocket@gmlaw.com

 /s/ Roy Taub
Jeffrey A. Backman (admitted *pro hac vice*)
Roy Taub (admitted *pro hac vice*)
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel.  954.491.1120
Fax  954.213.0140
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
khia.joseph@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendant*
*Grand Caribbean Cruises, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

 /s/ Roy Taub
ROY TAUB