1
2
3
4
5
6

SHARON A. URIAS (SBN 016970)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ  85255
Tel.  602.726.0711
Fax  480.306.5459
Email:  sharon.urias@gmlaw.com
         azdocket@gmlaw.com

7
8
9
10
11
12
13
14

JEFFREY A. BACKMAN (admitted *pro hac vice*)
ROY TAUB (admitted *pro hac vice*)
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel.  954.491.1120
Fax  954.213.0140
Email:  jeffrey.backman@gmlaw.com
         roy.taub@gmlaw.com
         khia.joseph@gmlaw.com
         cheryl.cochran@gmlaw.com

15

*Attorneys for Defendant Grand Caribbean Cruises, Inc.*

16
17
18

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

19
20
21
22
23
24
25

| Richard Winters, Jr. Joseph Brem, and David James, individually and on behalf of all others similarly situated, | No. 2:20-cv-00168-DWL |
|---|---|
| Plaintiffs, | **DEFENDANT'S MOTION TO DISMISS COUNTS I AND II OF PLAINTIFFS' SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION** |
| v. | |
| Grand Caribbean Cruises Incorporated, | |
| Defendant. | |

26
27
28

Defendant Grand Caribbean Cruises, Inc. ("Grand Caribbean"), pursuant to Federal Rule 12(b)(1), hereby moves to dismiss Counts I and II of Plaintiffs' Second Amended Complaint, (Dkt. No. 18) ("SAC"),[1] for lack of subject-matter jurisdiction.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiffs' lawsuit aims to enforce two statutory provisions that, at the time of the alleged telephone calls, were facially unconstitutional and thus cannot be enforced.  Counts I and II of the SAC are brought under provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), that prohibit the use of an automatic telephone dialing system and/or an artificial or prerecorded voice.  The Supreme Court recently declared one of those provisions to be in violation of the First Amendment and unconstitutional, and the second provision suffers from the same constitutional violation.  *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335 (2020) ("*AAPC*").  To preserve the statute, the Supreme Court severed the "government-debt exception," which impermissibly exempted from the provision telephone calls that were "made solely to collect a debt owed to or guaranteed by the United States."   But, under settled and bedrock principles of law, and as held by two courts – the only courts so far to address this issue – that severance applies prospectively only.  Thus, because the telephone calls at issue allegedly took place when the unconstitutional government-debt exception applied, this Court lacks subject-matter jurisdiction over Plaintiffs' claims, and their dismissal is required.

### STATEMENT OF FACTS

In the SAC, Plaintiffs Richard Winters, Jr., Joseph Brem, and David James each allege that they received telephone calls on their cellular telephones or residential landlines that violate the TCPA's prohibition on the use of an automatic telephone dialing system or an artificial or prerecorded voice, codified at 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B). Winters alleges he received violative telephone calls on his cellular telephone "[b]eginning

---

[1] Although the SAC is Plaintiffs' third filed complaint, it is erroneously titled "First Amended Complaint."

in or around July 2019 . . . ."  Dkt. No. 18 at ¶¶ 11 & 14.  Brem alleges he received violative telephone calls on his cellular telephone in August 2019.  *See id.* at ¶¶ 1* & 4*.[2]   James alleges that "[i]n or about February 2020, Defendant contacted James approximately 6-7 times on James's landline telephone number . . . ."  *Id.* at ¶¶ 15* & 18*-19*.  Notably, none of the Plaintiffs alleges that he received any allegedly violative telephone calls before November 2, 2015, when the "government-debt exception" was added to the TCPA, (Bipartisan Budget Act of 2015, Pub. L. 114-74, 129 Stat. 584, title III, § 301(a)(1)(A) & (B) (2015)), or after July 6, 2020, the date of the *AAPC* decision.

## ARGUMENT

## I.  APPLICABLE LEGAL STANDARDS

A motion to dismiss for lack of subject-matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1).  "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction) . . . ."  *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 577 (1999).  "The requirement that [subject-matter] jurisdiction be established as a threshold matter . . . is 'inflexible and without exception,' for '[j]urisdiction is power to declare the law,' and '[w]ithout jurisdiction the court cannot proceed at all in any cause.'"  *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal citations omitted)).  As "the party who seeks the exercise of jurisdiction in his favor," the plaintiff "must carry throughout the litigation the burden of showing that he is properly in court."  *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).  When a court lacks subject-matter jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 7 Wall. 506, 514 (1868).

---

[2] Because the numbering of the SAC's paragraphs restarts after Paragraph 14, to facilitate the Court's review any paragraph numbers in the "restarted" section are followed by an asterisk.

## II.   THE COURT LACKS SUBJECT-MATTER JURISDICTION OF CLAIMS ASSERTING VIOLATIONS OF TCPA PROVISIOSN THAT WERE UNCONSTITUTIONAL AT THE TIME OF THE ALLEGED VIOLATIONS

### A.   The Supreme Court's *AAPC* Ruling

In *AAPC*, the issues presented were "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute."  No. 19-631, 2019 WL 6115075, *I (U.S. Nov. 14, 2019).  *See also AAPC*, 140 S. Ct. 812 (2020) (granting petition for certiorari).  On July 6, 2020, the Supreme Court decided *AAPC*.  The Court's Opinion was a deeply fractured plurality, but a majority of justices were able to agree on two things:  (1) "Six Members of the Court . . . conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment" and the government-debt exception could not pass strict scrutiny; and (2) "seven members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute."  *AAPC*, 140 S. Ct. at 2343.[3]

### B.   The Invalidation of the TCPA Provision at Issue as Unconstitutional Precludes Subject-Matter Jurisdiction

The Supreme Court's determination of unconstitutionality in *AAPC* renders Sections 227(b)(1)(A)(iii) and (b)(1)(B) void and deprives this Court of subject-matter jurisdiction over Plaintiff's claims asserted under those provisions.  Although the Supreme Court "cure[d] [the] constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute," (*id.* at 2356), that was prospective only, and does not alter or eliminate the fact that for nearly five years – during which time ***all*** of the telephone calls Plaintiff complains about allegedly occurred – Sections 227(b)(1)(A)(iii) and (b)(1)(B) were unconstitutional and void, meaning the Court has no jurisdiction to enforce

---

[3] While *AAPC* concerned 47 U.S.C. § 227(b)(1)(A)(iii), Congress added the same impermissible government-debt exception to § 227(b)(1)(B) at the same time, and the same reasoning applies for its unconstitutionality as well.  *See* 129 Stat. 584, title III, § 301(a)(1)(A) & (B).

-3-

those provisions.  As two district courts have already found, that conclusion necessarily follows from the *AAPC* ruling.  *See Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915, *7 (N.D. Ohio Oct. 29, 2020) ("Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."); *Creasy v. Charter Commc'ns, Inc*., No. CV 20-1199, 2020 WL 5761117, *2 (E.D. La. Sept. 28, 2020) ("That fact deprives the Court of jurisdiction over much of this action.").

It is axiomatic that a person cannot violate a statutory provision that was unconstitutional at the time of the alleged violation.  Chief Justice Marshall delineated that "[a]n act of congress repugnant to the constitution cannot become a law."  *Marbury v. Madison*, 5 U.S. 137, 138 (1803).  Thus, "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."  *Norton v. Shelby County*, 118 U.S. 425, 442 (1886).  A corollary to that bedrock principle is that "[i]f the law which defines the offense and prescribes its punishment is void, the court [is] without jurisdiction."  *The Ku Klux Cases*, 110 U.S. 651, 654 (1884).  Indeed, the courts have long held that "if the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes," because "[a]n unconstitutional law is void, and is as no law" so that "[a]n offence created by it is not a crime."  *Ex parte Siebold*, 100 U.S. 371, 376, 377 (1879).  *See also Montgomery v. La.*, 136 S. Ct. 718, 731 (2016) ("A conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void.  It follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule . . . .") (citing *Siebold*, 100 U.S. at 376).

In other words, "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce) . . . ."  *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996).  *See also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-60 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to *ignore* it.  It decides the case '*disregarding the [unconstitutional] law*,' because a law repugnant to

-4-

the Constitution 'is void, and is as no law.'") (quoting *Marbury*, 5 U.S. at 178; *Siebold*, 100 U.S. at 376)).  Here, the unconstitutional "law" is the very TCPA provisions upon which Plaintiffs premise Counts I and II, and because the underlying statutory provisions at the time of the alleged violations were "repugnant to the constitution [and] void," (*Marbury*, 5 U.S. at 180), the Court lacks jurisdiction to adjudicate those claims.

Applying these principles, the two district courts to have addressed this issue in the wake of *AAPC* concluded, both in thorough and reasoned decisions, that the courts lack subject-matter jurisdiction to hear claims brought under § 227(b)(1)(A)(iii) for telephone calls alleged to have taken place when the statute was unconstitutional and could not be enforced. *See Lindenbaum*, 2020 WL 6361915 at *2-8; *Creasy*, 2020 WL 5761117 at *1-7.  Both courts emphasized that there is no subject-matter jurisdiction to enforce a law that unconstitutionally restricted speech when the speech allegedly took place.  In *Creasy*, the court observed that "a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion."  2020 WL 5761117 at *3.  Similarly, in *Lindenbaum*, the court reasoned, "at the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction.  The Court cannot wave a magic wand and make that constitutional violation disappear."  2020 WL 6361915 at *7.

Both courts relied upon *Grayned v. City of Rockford*, where the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that even though the anti-picketing provision at issue was later removed by the legislature, courts "[n]ecessarily . . . must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted."  408 U.S. 104, 107 n.2 (1972).  In other words, the inquiry is whether the offending statute was constitutional ***at the time the alleged speech or violation occurred***, not whether it was subsequently cured by legislative or, as in the case of the TCPA's government-debt exception, judicial action.[4]  And it is undeniable that §§ 227(b)(1)(A)(iii)

---

[4] *See also*, *e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) ("[A] defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity."); *Montgomery*, 136 S.Ct. at 731 (explaining that a "penalty imposed pursuant to

and (b)(1)(B) were unconstitutional at the time of the alleged telephone calls that Plaintiffs are suing over, *i.e.*, July 2019, August 2019, and February 2020.

While the Supreme Court severed the government-debt exception in *AAPC*, "severance of the government-debt exception applies only prospectively." *Lindenbaum*, 2020 WL 6361915 at *3. *See also Arthrex, Inc. v. Smith & Nephew, Inc*., 953 F.3d 760, 767 (Fed. Cir. 2020) (O'Malley, J., concurring) ("[J]udicial severance is not a 'remedy'; it is a forward-looking judicial fix."). As the *Lindenbaum* court explained, "severance of the content-based restriction does not offer a 'remedy' to correct *past* harm. Here, defendants do not seek the right to speak, having already done so. They seek the right to be free from punishment for speaking during a time when an unconstitutional content-based restriction existed. A forward-looking fix offers no remedy for this past wrong." 2020 WL 6361915 at *6. In support of that finding, the *Lindenbaum* court relied upon the Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), which was issued a week before *AAPC*. There, the Supreme Court severed a provision regarding removal of the head of the agency that rendered prior agency decisions unconstitutional, but remanded the case to address whether the subject act was validly ratified. *See Seila Law*, 140 S. Ct. at 2208.

As the *Lindenbaum* court observed, "[i]f severance applied retroactively, there would be no need for the past acts to be ratified." 2020 WL 6361915 at *6 n.1. Rather, the "government-debt" exception made the entirety of that form of § 227(b)(1)(A)(iii) unconstitutional and unenforceable, and this Court lacks subject-matter jurisdiction to impose liability upon Grand Caribbean for a violation of that provision. *See id.* at *7 ("The insertion of the government-debt exception transformed this valid time, place, and manner restriction into an unconstitutional content-based restriction."); *Creasy*, 2020 WL 5761117 at *5 ("[T]he *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) is void because it itself was

---

an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees.").

repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*.").

### C.      Nothing in *AAPC* Requires or Persuasively Calls for a Different Result

Given that *AAPC* was a declaratory judgment action, it is unsurprising that the Supreme Court did not decide the ruling's impact on alleged violations during the unconstitutional period of Section 227.  Plaintiff may attempt to rely upon *obiter dictum* in the plurality opinion to avoid dismissal, but such an attempt would be unavailing.

As the court in *Creasy* observed, on the question being raised by this Motion, *AAPC* offers "precious little.  In the few lines of nonbinding dicta shedding any light on the issue, the Court offered a pair of squarely contradictory answers."  2020 WL 5761117 at *2.  *See also Lindenbaum*, 2020 WL 6361915 at *5 ("[T]his Court agrees with the characterization of footnote 12 set forth in . . . *Creasy* . . . .").  In a footnote, the plurality opinion – in which only Chief Justice Roberts, Justice Alito, and Justice Kavanaugh joined – suggests that no one who had impermissibly been favored by Congress (government debt collectors) "should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate."  140 S.Ct. at 2355 n.12.

As for the other callers during that time who were the victims of Congress's impermissible and unconstitutional content discrimination, the plurality opinion simply states, without any explanation or reference to the principle that an unconstitutional law is repugnant and void, "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."  *Id.*  Justice Gorsuch, in the portion of his opinion joined by Justice Thomas, disagreed with that "suggest[ion]," explaining that "[a] holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate."  *Id.* at 2366.

Nothing in that disagreement undercuts the conclusion that the Court lacks subject-

matter jurisdiction over claims seeking to impose liability under an unconstitutional law.  To begin with, as the court in *Creasy* correctly observed, the plurality opinion's footnote suggestion is not binding or controlling because it constitutes the opinion of only three justices and, in any event, is no more than "passing Supreme Court dicta of no precedential force . . . ."  2020 WL 5761117 at *2.

Moreover, the plurality's suggestion that liability could still be imposed upon defendants under a law at the time that it was unconstitutional does not square with the constitutional jurisprudence developed over two hundred years that supports Justice Gorsuch's position.  The *Creasy* court relied on that jurisprudence to "conclude[ ] that Justice Gorsuch's is the better argument as a matter of law and logic."  2020 WL 5761117 at *2.  *See also Lindenbaum*, 2020 WL 6361915 at *5 ("Absent footnote 12, the Court finds little, if any, support for the conclusion that severance of the government-debt exception should be applied retroactively so as to erase the existence of the exception.").  The plurality opinion's passing suggestion in a footnote does not mention or consider any of that case law.  One would think that if three Supreme Court justices intended to overrule that important case law, they would have done so explicitly, especially when no party asked them to do so and it was not briefed.  *Accord Shalala v. Ill. Council on Long Term Care, Inc*., 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*.").

*AAPC* does not address, let alone upend, the constitutional principles that preclude subject-matter jurisdiction over claims asserting violations of a law when the law was unconstitutional.  The court in *Creasy* emphasized both that "a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion," which is what Plaintiff's TCPA claims would seek to do here, and that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)."  2020 WL 5761117 at *3 (quoting *Grayned*, 408 U.S. at 107 n.2; *Baucum*, 80 F.3d at 541-42).

These principles take on outsized significance in this case give the nature of the Supreme Court's holding in *AAPC*, which was that in adding the government-debt exception,

Congress impermissibly and unconstitutionally favored certain speech (collection of government debt) over all others.  This addition "fundamentally alter[ed] the *entire* provision [Section 227] . . . .  Without the exception, § 227(b)(1)(A)(iii) bans the gamut of robocalls with no regard to content. With the exception, it allows robocalls of one category, while banning all others. This distinction is plain, and it drove the binding result in *AAPC*."  *Id.*  The effect of the government-debt exception thus was to render "the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) . . . void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*."  *Id.*

The *Lindenbaum* court ruled similarly.  It echoed Justice Gorsuch's astute observation in critiquing the plurality opinion's suggestion that liability could still be imposed against defendants not covered by the government debt-exception notwithstanding the ruling that that version of the provision was unconstitutional, as that would perpetuate the content discrimination that led to the invalidation of Section 227 as it existed from November 2, 2015 to July 6, 2020.  *See AAPC*, 140 S.Ct. at 2366 ("[A] holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.").  The *Lindenbaum* court reasoned,

> if the statute is not considered void *ab initio*, it contains an unconstitutional content-based restriction that improperly favors some speech over other speech. And, to treat it as void *ab initio* only as to certain parties [*i.e.*, government debt collectors] would likely raise its own set of equal treatment concerns–the very concern raised by the *AAPC* dissent.  The fact remains that at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. And, a later amendment to a statute cannot be retroactively applied.

*Lindenbaum*, 2020 WL 6361915 at *7 (citing *Grayned*, 408 U.S. at 107 n.2).

Basic and fundamental notions of due process, reinforced in hundreds of years of constitutional jurisprudence, make clear that the unconstitutional provision of the TCPA at issue in this lawsuit is void for purposes of this case and this Court lacks subject-matter jurisdiction over claims seeking to impose liability under a void and unconstitutional provision.  Otherwise, government debt collectors would continue to enjoy preferential

treatment – protection from liability – while anyone engaging in other speech during the unconstitutional period would continue to face the prospect of ruinous liability,[5] even though the law being enforced was unconstitutional at the time of that speech precisely because of that type of favoritism.

**CONCLUSION**

When a court lacks subject-matter jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *McCardle*, 7 Wall. at 514.  For the foregoing reasons, Grand Caribbean respectfully requests that the Court enter an order dismissing Counts I and II of the Second Amended Complaint for lack of subject-matter jurisdiction, and providing any other relief the Court deems just and appropriate.

DATED:  November 5, 2020                    Respectfully Submitted,

                                            GREENSPOON MARDER LLP

                                            Sharon A. Urias (SBN 016970)
                                            8585 E. Hartford Drive, Suite 700
                                            Scottsdale, AZ  85255
                                            Tel.  602.726.0711
                                            Fax  480.306.5459
                                            sharon.urias@gmlaw.com
                                            azdocket@gmlaw.com

                                             */s/ Roy Taub*
                                            Jeffrey A. Backman (admitted *pro hac vice*)
                                            Roy Taub (admitted *pro hac vice*)
                                            200 East Broward Boulevard, Suite 1800
                                            Ft. Lauderdale, FL 33301
                                            Tel.  954.491.1120
                                            Fax  954.213.0140
                                            jeffrey.backman@gmlaw.com
                                            roy.taub@gmlaw.com
                                            khia.joseph@gmlaw.com
                                            cheryl.cochran@gmlaw.com

---

[5] *See*, *e.g.*, *McMillon v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

*Attorneys for Defendant*
*Grand Caribbean Cruises, Inc.*

### **CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ Roy Taub*
ROY TAUB