**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Winters, Jr., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Grand Caribbean Cruises Incorporated,<br><br>    Defendant. | No. CV-20-00168-PHX-DWL<br><br>**ORDER** |

This is a putative class action brought by Plaintiffs Richard Winters, Jr. ("Winters"), Joseph Brem ("Brem"), and David James ("James") (collectively, "Plaintiffs") against Defendant Grand Caribbean Cruises Incorporated ("Grand Caribbean") for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Grand Caribbean moves to dismiss all of Plaintiffs' claims for lack of personal jurisdiction and for failure to state a claim (Doc. 19) and moves to dismiss Counts One and Two of the Second Amended Complaint ("SAC") for lack of subject matter jurisdiction (Doc. 24). For the following reasons, the Court dismisses the SAC for lack of personal jurisdiction and denies, without prejudice, Grand Caribbean's requests for dismissal on other grounds.

…

…

…

…

…

# BACKGROUND

I. <u>Factual Background</u>

The following facts are derived from the SAC. (Doc. 18.)

### A. **Winters**

Winters resides in Mesa, Arizona. (*Id.* ¶ 5.) In approximately July 2019, "Defendant"[1] began calling Winters's cell phone, without his prior consent, "in an attempt to solicit Winters to purchase Defendant's services." (*Id.* ¶¶ 11, 18.) Winters has been on the National Do-Not-Call Registry (the "Registry") since "at least June 2019." (*Id.* ¶ 19.) During at least some of the calls, Winters "either heard a beep or a pause before a representative of Defendant and/or Defendant's agent came on the phone line." (*Id.* ¶ 20.)

### B. **Brem**

Brem resides in Casa Grande, Arizona. (*Id.* ¶ 6.) In August 2019, "Defendant contacted Brem on Brem's cellular telephone number, in an attempt to solicit Brem to purchase Defendant's services," without Brem's prior consent. (*Id.* at 6 ¶ 1, 7 ¶ 10.)[2] The representative on the line "asked Brem several questions and then transferred Brem to a representative" who said, "welcome to Grand Caribbean Cruises." (*Id.* at 7 ¶¶ 6-7.) Brem believes that "Defendant" called him from a fake or spoofed phone number. (*Id.* at 7 ¶ 5.) Brem has been on the Registry since "at least October 2017." (*Id.* at 8 ¶ 11.)

### C. **James**

James resides in Buena Park, California. (*Id.* ¶ 7.) In approximately February 2020, "Defendant contacted James approximately 6-7 times on James's landline telephone number . . . in an attempt to solicit James to purchase Defendant's services," without James's prior consent. (*Id.* at 8 ¶ 15, 10 ¶ 25.) Some of the calls featured a prerecorded voice. (*Id.* at 8 ¶ 19.) When James answered, he "responded to questions asked by [the] prerecorded voice" and was then "connected with a live agent" identified as a

---

[1] Although the SAC originally defines "Defendant" as Grand Caribbean (Doc. 18 ¶ 1), it later defines "Defendant" as collectively referring to Grand Caribbean, Grand Caribbean's subsidiaries, and Grand Caribbean's agents (*id.* ¶ 9).

[2] The SAC begins with paragraphs 1-24, then restarts at paragraph 1 on page 6.

representative of Grand Caribbean. (*Id.* at 9 ¶ 20.) James told the representative to stop calling him and requested that he be added to the "Do Not Call" list. (*Id.*) On February 18, 2020, "Defendant subsequently called James again" and "James was again transferred to a live agent . . . who attempted to sell James a cruise." (*Id.* at 9 ¶ 21.) On this call, James confirmed that Grand Caribbean was calling him and that its address was in Fort Lauderdale, Florida. (*Id.*) James received at least two more calls from "Defendant," and he again told the representative to stop calling him and to add him to the "Do Not Call" list. (*Id.* at 10 ¶¶ 22-23.) James has been on the Registry since 2006. (*Id.* at 10 ¶ 26.)

II. Procedural History

On January 22, 2020, Plaintiffs initiated this action by filing a complaint. (Doc. 1.)

On March 9, 2020, before Grand Caribbean responded to the original complaint, Plaintiffs filed a First Amended Complaint. (Doc. 10.)

On August 12, 2020, with Grand Caribbean's consent, Plaintiffs filed the SAC. (Doc. 18.)

On August 26, 2020, Grand Caribbean filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim. (Doc. 19.) This motion became fully briefed on October 12, 2020. (Docs. 20, 21.)

On November 5, 2020, Grand Caribbean filed a motion to dismiss Counts One and Two of the SAC for lack of subject matter jurisdiction. (Doc. 24.) This motion became fully briefed on December 22, 2020. (Docs. 25, 27.)[3] Additionally, Plaintiffs have filed several notices of supplemental authority concerning it. (Docs. 26, 28, 29.)

**DISCUSSION**

As noted, Grand Caribbean moves to dismiss the SAC in its entirety for lack of personal jurisdiction and for failure to state a claim (Doc. 19) and moves to dismiss Counts One and Two of the SAC for lack of subject matter jurisdiction (Doc. 24). Because jurisdiction is a threshold question, and because a dismissal based on a lack of personal

---

[3] The reply at Doc. 27 is 13 pages long. Under LRCiv 7.2(e), "a reply including its supportive memorandum may not exceed eleven (11) pages." Counsel should, in the future, comply with the applicable page limits.

- 3 -

jurisdiction would obviate the need to address the other issues raised by the parties, the Court first addresses personal jurisdiction. *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."); *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008) ("Supreme Court precedent is clear that we may choose among threshold grounds for denying audience to a case on the merits.") (internal quotation marks omitted).

I.  <u>Legal Standard</u>

A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When doing so, the movant may submit declarations and other evidence. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (when ruling on a motion to dismiss for lack of personal jurisdiction, "[w]e may not assume the truth of allegations in a pleading which are contradicted by affidavit") (internal quotation marks omitted).

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks omitted). Although "uncontroverted allegations must be taken as true, and [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor," a "plaintiff may not simply rest on the bare allegations of [the] complaint" if those allegations are properly controverted. *Id.* (first alteration in original) (internal quotation marks omitted). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Arizona law permits the

exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)). Accordingly, whether this Court has "personal jurisdiction over Defendant[] is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Id.*

"Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted). Minimum contacts exist "if the defendant has continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (internal quotation marks omitted).

Here, Plaintiffs concede that Grand Caribbean, a Florida company, is not subject to general jurisdiction in Arizona. (Doc. 20 at 13 n.13.) Thus, the Court must apply the Ninth Circuit's three-part test to determine if Grand Caribbean has sufficient contacts with Arizona to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Morrill*, 873 F.3d at 1142. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (internal quotation marks omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks omitted).

Courts use the "purposeful availment" test for claims arising from contract and the

1  "purposeful direction" test for claims arising from tort. *Id.* Here, all of Plaintiffs' claims arise from tort, so the "purposeful direction" test applies. *Born v. Celtic Mktg. LLC*, 2020 WL 3883273, *3 (C.D. Cal. 2020) ("Claims for violation of the TCPA sound squarely in tort and require application of the purposeful direction analysis."). Under this test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004) (internal quotation marks omitted).

"Actions may be directed at the forum state even if they occurred elsewhere," but "'random, fortuitous, or attenuated contacts' are insufficient to create the requisite connection with the forum." *Morrill*, 873 F.3d at 1142 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Court must focus on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (internal quotation marks omitted). Importantly, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 284 (internal quotation marks omitted). Courts "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

II. Analysis

Plaintiffs argue that Grand Caribbean is subject to specific personal jurisdiction in Arizona because (1) it engaged in "direct contact" with Arizona residents, or alternatively (2) its agents' contacts with Arizona residents may be imputed to it. (Doc. 20 at 17 ["If the Court finds that Plaintiff has stated claims, it will also find either direct contact or sufficient contacts through Defendant's agent."].) As explained below, Plaintiffs have failed to meet their burden of establishing specific personal jurisdiction under either of these theories.

A. **Direct Contact**

Under the TCPA, it is "unlawful for any person . . . to make any call (other than a

call made for emergency purposes or made with the express prior consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone." 47 U.S.C. § 227(b)(1)(A)(iii). "The plain language of the TCPA assigns civil liability to the party who 'makes' a call." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012). Thus, "a party can be held liable under" this provision of the TCPA "[1] directly if it personally 'makes' a call in the method proscribed by the statute, or [2] vicariously, such as, if it was in an agency relationship with the party that" made the offending call. *Id. See generally Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014) ("Although Campbell-Ewald did not send any text messages, it might be vicariously liable [under the TCPA] for the messages sent by Mindmatics. . . . [T]he TCPA imposes vicarious liability where an agency relationship, as defined by federal common law, is established between the defendant and a third-party caller.").[4]

In the SAC, Plaintiffs allege that "Defendant" made the challenged phone calls. (Doc. 18 ¶ 11, 6 ¶ 1, 8 ¶ 15.) However, as discussed in footnote one, the SAC is ambiguous as to the precise identity of "Defendant"—it simultaneously defines "Defendant" as Grand Caribbean alone and as a group of entities composed of Grand Caribbean, certain unspecified subsidiaries of Grand Caribbean, and certain unspecified agents of Grand Caribbean. (Doc. 18 ¶¶ 1, 9.) This imprecision makes it difficult to discern who, exactly, is the alleged culprit.

In any event, Grand Caribbean contends it is not subject to personal jurisdiction in Arizona under a "direct contact" theory because it "did not place or make any telephone calls to Plaintiffs." (Doc. 19 at 6.) To support this contention, Grand Caribbean has

---

[4] Counts Three and Four of the SAC allege violations of 47 U.S.C. § 227(c), which concerns, among other things, calls made in violation of regulations promulgated by the Federal Communications Commission. The parties have not argued that Counts Three and Four are subject to a different personal jurisdiction analysis than Counts One and Two, so the Court will analyze all counts together. *Cf. Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, *4 (N.D. Cal. 2019) ("Plaintiff's section 227(c) claims are similarly deficient because Plaintiff fails to plead *any* facts giving rise to a reasonable inference that Freedom Forever, or an entity under its control, made the calls at issue.").

- 7 -

submitted a declaration from Jennifer Poole, its president, who avows that "Grand Caribbean has never placed or initiated a telephone call to any of the Plaintiffs in this action." (Doc. 19-1 ¶ 15.)

Plaintiffs attempt to controvert Grand Caribbean's evidence on this point by presenting their own declarations. But in those declarations, each Plaintiff merely asserts that he received one or more phone calls from "Defendant or one of its agents." (Doc. 20-1 ¶ 4; Doc. 20-2 ¶ 4; Doc. 20-3 ¶ 4.) These assertions are marred by the same ambiguity that infects the SAC and are insufficient to establish that the calls were placed directly by Grand Caribbean. Indeed, two of the Plaintiffs assert that "the initial caller was clearly an agent of Defendant." (Doc. 20-1 ¶ 6; Doc. 20-2 ¶ 8.)

On this record, the Court must accept Grand Caribbean's contention that it didn't make any of the challenged phone calls to Plaintiffs. *Ranza*, 793 F.3d at 1068; *CollegeSource,* 653 F.3d at 1073. Accordingly, Plaintiffs haven't met their burden of showing that Grand Caribbean itself committed an intentional act expressly aimed at Arizona (which, as noted, is part of Plaintiffs' required showing under the Ninth Circuit's "purposeful direction" test).

B. **Agency Liability**

Plaintiffs' other theory is that Grand Caribbean is subject to specific personal jurisdiction in Arizona based on the conduct of its agents. (Doc. 20 at 17.) Paragraph 10 of the SAC contains the following allegations concerning the nature of the purported agency relationship:

> [E]ach and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. . . . [E]ach of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

(Doc. 18 ¶ 10.)

Grand Caribbean argues these allegations are insufficient because it "makes no sense, has no basis in the law, and precludes any plausible assertion of an agency

- 8 -

relationship" for Plaintiffs to assert that Grand Caribbean simultaneously "has direct liability as the caller, vicarious liability for the calls made by its agents, and *also* liability as the same callers' agent." (Doc. 19 at 10.) Plaintiffs don't respond to Grand Caribbean's arguments on this point, instead reasoning that it is "obvious that some agreement existed between [Grand Caribbean] and its agents regarding the placing of calls and transfer of those calls to [Grand Caribbean]" because the calls were transferred "directly to a representative of [Grand Caribbean]." (Doc. 20 at 10.) Plaintiffs also argue that a "reasonable consumer would have believed that the robocall was being placed by an agent of [Grand Caribbean] with its express authority, given that the robocall was then transferred to a representative who identified the company by name and thus was clearly made for the benefit of [Grand Caribbean]." (*Id.* at 11.)

The Court agrees with Grand Caribbean that Plaintiffs have failed to meet their burden of establishing specific personal jurisdiction based on an agency theory.[5] Plaintiffs do not distinguish between entities when setting out the challenged conduct, instead using the term "Defendant" as shorthand throughout the SAC. But as noted, Plaintiffs define "Defendant" to simultaneously mean Grand Caribbean alone and Grand Caribbean plus an unspecified group of subsidiaries and/or agents. Such contradictory allegations make it impossible for the Court to determine the precise identity of the entity against whom the allegations are directed. Indeed, the word salad[6] of allegations appearing in paragraph 10 of the SAC even includes a few references to "Defendants," even though there is only one

---

[5] Although Grand Caribbean also identifies the insufficiency of Plaintiffs' agency-related allegations as a basis for seeking dismissal under Rule 12(b)(6) (Doc. 19 at 12-14), courts routinely analyze whether a complaint has sufficiently alleged an agency relationship when evaluating the existence of personal jurisdiction under Rule 12(b)(2). *See, e.g.*, *Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 2019 WL 6135030, *4-6 & n.2 (C.D. Cal. 2019). *See also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (noting that, although a recent Supreme Court opinion "voided our agency approach for imputing contacts for purpose of general jurisdiction," it "left open the question of whether an agency relationship might justify the exercise of specific jurisdiction"). As noted, courts should resolve jurisdictional arguments before addressing merits-based dismissal arguments.

[6] "[A] string of empty, incoherent, unintelligible, or nonsensical words or comments." *Word Salad*, Merriam-Webster's Online Dictionary (last visited Feb. 11, 2021), https://www.merriam-webster.com/dictionary/word%20salad.

defendant named in this action. Due to this imprecision, Plaintiffs have made it impossible to analyze the extent to which Grand Caribbean may have had an agency relationship with another entity that could subject it to specific personal jurisdiction. *Pado, Inc. v. SG Trademark Holding Co.*, 2020 WL 1445720, *5 (C.D. Cal. 2020) ("Generalized allegations about a group of defendants [are] insufficient to establish personal jurisdiction.").

Most important, Plaintiffs do not allege any facts showing that Grand Caribbean had "the right to substantially control its [agent's] activities," which is a fundamental tenet of an agency relationship. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017). *Williams* is instructive. There, the Ninth Circuit held there was no specific personal jurisdiction over a parent corporation for actions taken by a subsidiary because there were no allegations that the parent "had the right to control [the subsidiary's] activities in any manner at all." *Id.* at 1025. The court determined that the following allegation—"Defendants . . . were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment . . . and are legally responsible because of their relationship with their co-Defendants"—was insufficient to survive a challenge under Rule 12(b)(2) because it was a "conclusory legal statement unsupported by any factual assertion regarding [the parent's] control over [the subsidiary] (or regarding any other aspect of the parent-subsidiary relationship)." *Id.* at 1025 n.5 (ellipses in original). The court thus concluded that, "even assuming . . . that a subsidiary's contacts *could* be attributed to its parent" for purposes of establishing specific personal jurisdiction, the plaintiff had "failed to establish specific jurisdiction over [the parent]." *Id.* at 1025.

So, too, here. Plaintiffs' conclusory allegations of agency are similar to those deemed insufficient in *Williams*, because the allegations in paragraph 10 of the SAC say nothing about control. This deficiency is not cured by Plaintiffs' assertion that some callers identified themselves as representatives of Grand Caribbean, because this again says nothing about control. *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, *5 (N.D. Cal. 2018) ("[T]he court can infer that there is some relationship between the purported representatives and defendant. But that inference is not enough because it

still does not allow the court to infer that defendant exercises control over the representatives.") The SAC's other allegations related to the concept of agency fare no better—they are formulaic recitations of the elements of an agency claim devoid of any specific facts. (*See, e.g.*, Doc. 18 ¶ 11 ["Defendant had actual knowledge and/or should have had knowledge of the conduct of its agent and therefore ratified the act."]; *id.* ¶ 12 ["Defendant is vicariously liable for the call to Winters through an agency-princip[al] relationship, as well as through apparent authority and ratification."]; *id.* ¶ 13 ["Winters alleges that Defendant was likewise acting as an agent of the initial caller . . . and is similarly vicariously liable for the conduct of Defendant under a direct agency theory, apparent authority and ratification."].)

Other courts have dismissed TCPA claims based on a lack of personal jurisdiction where the complaint did not set forth specific facts establishing an agency relationship between the defendant and the caller. For example, one court dismissed the complaint because it "allege[d] violation of the TCPA solely on an agency theory, but without pleading facts sufficient to show" an agency relationship. *Naiman v. TranzVia LLC*, 2017 WL 5992123, *10 (N.D. Cal. 2017). As here, the complaint failed to "allege any facts showing that TranzVia had any control, or any express or actual authority, over [the alleged agent] or any associated entity that made the phone calls." *Id.* at *11. The court acknowledged that "[v]icarious liability may provide a valid theory for relief under the TCPA and for exercising jurisdiction over a defendant that otherwise lacks sufficient contacts with the forum" but concluded that the plaintiff had "failed to adequately plead any of the three forms of agency necessary to support a claim of vicarious liability. *Id.* at *13.

Similarly, courts have dismissed TCPA claims under Rule 12(b)(6) due to the presence of inadequate and conclusory allegations concerning the agency relationship between the defendant and the caller. *See, e.g., Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, *4 (N.D. Cal. 2019) (dismissing TCPA claims under Rule 12(b)(6), where complaint's agency-related allegations were identical to the allegations appearing in

- 11 -

paragraph 10 of the SAC, because those allegations were "wholly conclusory"); *Freidman v. Massage Envy Franchising, LLC*, 2013 WL 3026641, *3-4 (S.D. Cal. 2013) (similar allegations were insufficient to "raise the allegations beyond the speculative").[7] This is not, to be clear, some insurmountable pleading hurdle.  Other plaintiffs in TCPA cases have avoided dismissal by providing specific, non-conclusory allegations concerning the nature of the agency relationship between the defendant and the caller and the defendant's control over the caller's activities.  *See, e.g., Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 980-81 (D. Md. 2019) (rejecting argument that "to the extent Plaintiffs attempt to hold the Maryland Entities liable for the text messages allegedly sent to the Plaintiffs by Xfinity-Philadelphia, Plaintiffs have not adequately alleged such a theory of liability" because the "complaint sets forth an agency relationship among the Defendants.  At the top, Cordish wields say over any day-to-day operating decisions, including those regarding advertising, while ECI implements the advertising strategies to the various entities at base.  Further, Plaintiffs specifically allege that Cordish and ECI are responsible for TXT Live!  ECI developed the policies and procedures for creating text messaging campaigns and collecting lists of consumers' names and phone numbers for use in telemarketing campaigns, while Cordish gives final approval over marketing, lists TXT Live! as one of its primary assets, and owns the domain names associated with TXT Live!") (cleaned up).

---

[7] Courts have also dismissed non-TCPA claims for failure to state a claim based on the presence of boilerplate agency allegations. *See, e.g., Pallamary v. Elite Show Servs., Inc.*, 2018 WL 3064933, *14 (S.D. Cal. 2018) ("The FAC alleges, [']Plaintiff is informed and believes . . . Defendants were the agents and employees of their co-defendants, and in doing the things alleged in this complaint were acting within the course and scope of the agency and employment.['] This conclusory statement is insufficient to establish an agency theory . . . .") (citation omitted); *Walker v. Ditech Fin. LLC*, 2016 WL 5846986, *4 (N.D. Cal. 2016) ("Plaintiffs simply allege that 'each of the Defendants was the actual and apparent agents of each of the remaining Defendants and, in doing the things herein alleged, was acting within the course and scope of their actual and apparent agency and with the knowledge, notification, consent and ratification of each of the other defendants.' None of these allegations show that Ditech had a right to control RCS . . . .") (citation omitted); *Mindlab Media, LLC v. LWRC Int'l LLC*, 2012 WL 386695, *4 (C.D. Cal. 2012) (dismissing copyright infringement claim because boilerplate agency allegation did not allege "any facts to support a finding of . . . vicarious liability"); *Barba v. Lee*, 2010 WL 11515658, *8 (D. Ariz. 2010) (dismissing fraud claim against one defendant because allegation "conclusorily assert[ed]" an agency relationship).

The bottom line is that Plaintiffs have not alleged sufficient facts or proffered sufficient evidence to justify the exercise of personal jurisdiction over Grand Caribbean in Arizona. The Court therefore grants Grand Caribbean's motion to dismiss.

Plaintiffs request leave to amend in the event of dismissal. (Doc. 20 at 17.) This request is granted because it may be possible to cure the deficiencies identified above. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Finally, because the SAC has been dismissed in its entirety based on a lack of personal jurisdiction, it is unnecessary (at least for now) to address Grand Caribbean's other potential grounds for dismissal. If Plaintiffs file a third amended complaint ("TAC") in an attempt to address the deficiencies raised above, Grand Caribbean may re-raise its other dismissal arguments at that time.

Accordingly,

**IT IS ORDERED** that:

(1) Grand Caribbean's first motion to dismiss (Doc. 19) is **granted**.

(2) The SAC (Doc. 18) is **dismissed**.

(3) Grand Caribbean's second motion to dismiss (Doc. 24) is **denied** without prejudice.

(4) Plaintiffs may file and serve a TAC within 30 days from the date of this order. If Plaintiffs file a TAC, the changes shall be limited to curing the deficiencies raised in this order and Plaintiffs shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

(5) If Plaintiffs do not file and serve a TAC within 30 days from the date of this order, the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 11th day of February, 2021.

Dominic W. Lanza
United States District Judge