David J. McGlothlin, Esq. (SBN 026059)
david@kazlg.com
Ryan L. McBride, Esq. (SBN 032001)
ryan@kazlg.com
**Kazerouni Law Group, APC**
2633 E. Indian School Road, Ste 460
Phoenix, AZ  85016
Phone: 800-400-6808
Fax: 800-520-5523

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| Richard Winters, Jr., Joseph Brem, and David James, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Grand Caribbean Cruises, Inc.,<br><br>Defendant. | Case No.: 2:20-CV-00168-DWL<br><br>**CLASS ACTION**<br><br>**THIRD AMENDED COMPLAINT FOR VIOLATIONS OF:**<br><br>1.  NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)]<br>2.  WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)]<br>3.  NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br>4.  WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br><br>**DEMAND FOR JURY TRIAL** |

---

THIRD AMENDED CLASS ACTION COMPLAINT

1

Plaintiff RICHARD WINTERS, JR. ("Winters"), Plaintiff Joseph Brem ("Brem"), and Plaintiff David James ("James") (or jointly as "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following upon information and belief based upon personal knowledge:

## NATURE OF THE CASE

1. Plaintiffs bring this action individually and on behalf of all others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of GRAND CARIBBEAN CRUISES, INC. ("Defendant"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq.* ("TCPA") and related regulations, specifically the National Do-Not-Call provisions, thereby invading Plaintiffs' privacy.

## JURISDICTION & VENUE

2. Jurisdiction is also proper because there exists a federal question based on the fact that Plaintiffs' claims arise from the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq.* ("TCPA"), a federal statute.

3. Venue is proper in the United States District Court for the District of Arizona pursuant to *28 U.S.C. § 1391(b)(2)* because Defendant purposefully availed itself of Arizona by contracting with a telemarketing company ('the Telemarketing Agent") to specifically place solicitation calls to consumers nationwide, including in Arizona, and to Plaintiffs Winters and Brem who reside within the Counties of Maricopa and Pinal respectively.

4. Plaintiff is informed and believes that Defendant knew the leads pursued by the Telemarketing Agent would be located in Arizona before, during and after the calls being placed on Defendant's behalf, therefore Defendant purposefully availed themselves of this jurisdiction.

**PARTIES**

5.      Winters is a natural person residing in Mesa, Arizona and is a "person" as defined by *47 U.S.C. § 153 (39)*.

6.      Brem is a natural person residing in Casa Grande, Arizona and is a "person" as defined by *47 U.S.C. § 153 (39)*.

7.      James is a natural person residing in Buena Park, California and is a "person" as defined by *47 U.S.C. § 153 (39)*.

8.      Defendant is a Cruise Line and is a "person" as defined by *47 U.S.C. § 153 (39)*.

**FACTUAL ALLEGATIONS**

**Plaintiff Winters**

9.      Beginning in or around July 2019, the Telemarketing Agent contracted by Defendant contacted Winters on Winters' cellular telephone number ending in -6678 in an attempt to solicit Winters to purchase Defendant's services.  This call was placed directly by the Telemarketing Agent to Winters.

10.      The Telemarketing Agent was operating pursuant to a contract between Defendant and the Telemarketing Agent to place telemarketing calls on behalf of Defendant.

11.      Pursuant to the contract, the Telemarketing Agent was to place the calls using an automatic telephone dialing system or a prerecorded voice to consumers in the United States, including to consumers in Arizona such as Plaintiff Winters, to generate leads and solicit Defendant's goods and services to consumers for Defendant.

12.      The call Plaintiff Winters received from the Telemarketing Agent was placed directly pursuant to this contract between Defendant and the Telemarketing Agent and the Telemarketing Agent was acting within the express authority of Defendant in placing such call.

13.      By contracting with its Telemarketing Agent to place calls to

consumers across the United States, such as Plaintiff Winters, Defendant purposefully availed itself of the state of Arizona and this forum through the Telemarketing Agent's expressly authorized actions.

14.     Pursuant to the contract, Defendant maintained the right to substantially control the Telemarketing Agent's actions, including by specifying the nature and type of the calls to be placed, the means by which such calls were to be placed, the content of such calls, and by retaining the right to terminate the contract unilaterally to enforce its control over the Telemarketing Agent.

15.     Defendant had actual knowledge of the conduct of the Telemarketing Agent who was acting specifically pursuant to its contract with Defendant and Defendant therefore ratified the act.  Additionally, a reasonable consumer similarly situated to Winters would have believed that the robocall was placed by an agent of Defendant with its express authority, given that the robocall was transferred to a representative who identified Defendant by name and the call was clearly made for the benefit of Defendant.

16.     Further, Defendant is on notice that the Telemarketing Agent is placing calls in violation of the TCPA due to complaints it receives from angry consumers who are transferred and speak to Defendant who inform it that they had not given consent to receive such calls from the Telemarketing Agent. Despite being on notice that the Telemarketing Agent is placing calls in violation of the TCPA, Defendant has not taken steps to cease such actions as permitted through its contract with the Telemarketing Agent and thus ratifies its conduct.

17.     Winters alleges that Defendant is vicariously liable for the call to Winters through an agency-principle relationship, as well as through apparent authority and ratification.  See *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019).

18.   The Telemarketing Agent used an "automatic telephone dialing system" as defined by *47 U.S.C. § 227(a)(1)* to place its call to Winters seeking to solicit Defendant's services.

19.   The Telemarketing Agent contacted Winters from telephone number (480) 781-4192 confirmed to be its number.

20.   The Telemarketing Agent's calls constituted calls that were not for emergency purposes as defined by *47 U.S.C. § 227(b)(1)(A)*.

21.   The Telemarketing Agent's calls were placed to telephone number assigned to a cellular telephone service for which Winters incurs a charge for incoming calls pursuant to *47 U.S.C. § 227(b)(1)*.

22.   During all relevant times, neither Defendant nor the Telemarketing agent possessed Winters' "prior express consent" to receive calls using an automatic telephone dialing system on his cellular telephone pursuant to *47 U.S.C. § 227(b)(1)(A)*.

23.   Further, Winters' cellular telephone number ending in -6678 has been on the National Do-Not-Call Registry since at least June 2019.

24.   The Telemarketing Agent placed multiple calls soliciting its business to Winters on his cellular telephone ending in -6678 between on or around July of 2019. During most if not all of the calls, Plaintiff either heard a beep or a pause before a representative of the Telemarketing Agent came on the phone line. A beep or a pause tends to indicate an Automatic Telephone Dialing System was used to call Winters.

25.   Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

26.   Winters received multiple solicitation calls from the Telemarketing Agent within a 12-month period.

27.   The Telemarketing Agent continued to call Winters in an attempt to solicit Defendant's services and in violation of the National Do-Not-Call

provisions of the TCPA.

28.    Upon information and belief, and based on Winters' experiences of being called by the Telemarketing Agent after being on the National Do-Not-Call list for several years prior to the Telemarketing Agent's initial call, and at all relevant times, the Telemarketing Agent failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5).

**Plaintiff Brem**

29.    On or about August 19, 2019 at 8:20am, the Telemarketing Agent contacted Brem on Brem's cellular telephone number, in an attempt to solicit Brem to purchase Defendant's services.

30.    The Telemarketing Agent in its call with Brem used a prerecorded voice to ask Brem several qualifying questions and then transferred Brem directly to Defendant. The use of a prerecorded voice tends to indicate an Automatic Telephone Dialing System was used to call Brem.

31.    When Brem was transferred to a live agent, the agent identified herself as Michelle and stated, "welcome to Grand Caribbean Cruises". Since the initial caller transferred Brem to a representative of Defendant, the Telemarketing Agent had placed its call to Brem on behalf of Defendant to prescreen Brem as a lead before forwarding Brem to speak with Defendant and thus the call was clearly made by the Telemarketing Agent for the benefit of Defendant at the direction of Defendant.

32.    In placing the call to Brem, the Telemarketing Agent was operating pursuant to a contract between Defendant and the Telemarketing Agent to place telemarketing calls on behalf of Defendant.

33.    Pursuant to the contract, the Telemarketing Agent was to place the calls using an automatic telephone dialing system or a prerecorded voice to consumers in the United States, including to consumers in Arizona such as

Plaintiff Brem, to generate leads and solicit Defendant's goods and services to consumers for Defendant.

34. The call Plaintiff Brem received from the Telemarketing Agent was placed directly pursuant to this contract between Defendant and the Telemarketing Agent and the Telemarketing Agent was acting within the express authority of Defendant in placing such call.

35. By contracting with its Telemarketing Agent to place calls to consumers across the United States, such as Plaintiff Brem, Defendant purposefully availed itself of the state of Arizona and this forum through the Telemarketing Agent's expressly authorized actions.

36. Pursuant to the contract that resulted in the call to Plaintiff Brem, Defendant maintained the right to substantially control the Telemarketing Agent's actions, including by specifying the nature and type of the calls to be placed, the means by which such calls were to be placed, the content of such calls, and by retaining the right to terminate the contract unilaterally to enforce its control over the Telemarketing Agent.

37. Defendant had actual knowledge of the conduct of the Telemarketing Agent who was acting specifically pursuant to its contract with Defendant when it called Plaintiff Brem and Defendant therefore ratified the act. Additionally, a reasonable consumer similarly situated to Brem would have believed that the robocall was placed by an agent of Defendant with its express authority, given that the robocall was transferred to a representative who identified Defendant by name and the call was clearly made for the benefit of Defendant.

38. Further, Defendant is on notice that the Telemarketing Agent is placing calls in violation of the TCPA due to complaints it receives from angry consumers who are transferred and speak to Defendant who inform it that they had not given consent to receive such calls from the Telemarketing Agent.

Despite being on notice that the Telemarketing Agent is placing calls in violation of the TCPA, Defendant has not taken steps to cease such actions as permitted through its contract with the Telemarketing Agent and thus ratifies its conduct.

39.    Brem alleges that Defendant is vicariously liable for the call to Brem through an agency-principle relationship, as well as through apparent authority and ratification.  See *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019).

40.    The Telemarketing Agent used an "automatic telephone dialing system" as defined by *47 U.S.C. § 227(a)(1)* to place its call to Brem seeking to solicit Defendant's services.

41.    The Telemarketing Agent contacted Brem from telephone number (602) 753-0126 confirmed to be its number.

42.    The Telemarketing Agent's calls constituted calls that were not for emergency purposes as defined by *47 U.S.C. § 227(b)(1)(A)*.

43.    The Telemarketing Agent's calls were placed to telephone number assigned to a cellular telephone service for which Winters incurs a charge for incoming calls pursuant to *47 U.S.C. § 227(b)(1)*.

44.    During all relevant times, neither Defendant nor the Telemarketing agent possessed Brem's "prior express consent" to receive calls using an automatic telephone dialing system on his cellular telephone pursuant to *47 U.S.C. § 227(b)(1)(A)*.

45.    Further, Brem's cellular telephone number has been on the National Do-Not-Call Registry since at least October 2017.

46.    The Telemarketing Agent placed multiple calls soliciting Defendant's business to Brem on his cellular telephone on or around August 2019.Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

---

THIRD AMENDED CLASS ACTION COMPLAINT

47.     Brem received multiple solicitation calls from the Telemarketing Agent within a 12-month period.

48.     The Telemarketing Agent continued to call Brem in an attempt to solicit Defendant's services and in violation of the National Do-Not-Call provisions of the TCPA.

49.     Upon information and belief, and based on Brem's experiences of being called by the Telemarketing Agent after being on the National Do-Not-Call list for several years prior to the Telemarketing Agent's initial call, and at all relevant times, the Telemarketing Agent failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5).

50.     Further, Brem's cellular telephone number has been on the National Do-Not-Call Registry since at least October 2017.

**Plaintiff James**

51.     In or about February 2020, the Telemarketing Agent contacted James approximately 6-7 times on James's landline telephone number ending in 9304, in an attempt to solicit James to purchase Defendant's services.   This call was placed directly by the Telemarketing Agent to James.The Telemarketing Agent in its call with James used a prerecorded voice to ask Winters several qualifying questions and then transferred James directly to Defendant. The use of a prerecorded voice tends to indicate an Automatic Telephone Dialing System was used to call James.

52.     After about the seventh call, James answered the call from the Telemarketing Agent and responded to questions asked by the prerecorded voice. James was subsequently connected with a live agent for Defendant that identified themselves as "Grand Caribbean Cruises."  On this call, James told Defendant's representative to stop calling and requested the Defendant add James to Defendant's "Do Not Call" list.

53.     Despite James telling Defendant to stop calling, the Telemarketing Agent calling on behalf of Defendant subsequently called James again on February 18, 2020 from the phone number 714-276-6811.  On this phone call, James was again transferred to a live agent of Defendant's who attempted to sell James a cruise.  On that phone call, James confirmed that "Grand Caribbean Cruises" was calling and its address was 1451 W. Cypress Creek Road, Suite 300, Fort Lauderdale, FL 33309.

54.     Later that day on February 18, 2020, James received another phone call to his landline from the Telemarketing Agent using a prerecorded voice.

55.     On February 19, 2020, James received another call from a "vacation specialist" of Defendant directly. James again told Defendant to stop calling and requested Defendant put James on the "Do Not Call" list.

56.     In placing the call to James, the Telemarketing Agent was operating pursuant to a contract between Defendant and the Telemarketing Agent to place telemarketing calls on behalf of Defendant.

57.     Pursuant to the contract, the Telemarketing Agent was to place the calls using an automatic telephone dialing system or a prerecorded voice to consumers in the United States, including to consumers such as Plaintiff James, to generate leads and solicit Defendant's goods and services to consumers for Defendant.

58.     The call Plaintiff James received from the Telemarketing Agent was placed directly pursuant to this contract between Defendant and the Telemarketing Agent and the Telemarketing Agent was acting within the express authority of Defendant in placing such call.

59.     Pursuant to the contract that resulted in the call to Plaintiff James, Defendant maintained the right to substantially control the Telemarketing Agent's actions, including by specifying the nature and type of the calls to be placed, the means by which such calls were to be placed, the content of such calls, and by

retaining the right to terminate the contract unilaterally to enforce its control over the Telemarketing Agent.

60.     Defendant had actual knowledge of the conduct of the Telemarketing Agent who was acting specifically pursuant to its contract with Defendant when it called Plaintiff James and Defendant therefore ratified the act.  Additionally, a reasonable consumer similarly situated to James would have believed that the robocall was placed by an agent of Defendant with its express authority, given that the robocall was transferred to a representative who identified Defendant by name and the call was clearly made for the benefit of Defendant.

61.     Further, Defendant is on notice that the Telemarketing Agent is placing calls in violation of the TCPA due to complaints it receives from angry consumers who are transferred and speak to Defendant who inform it that they had not given consent to receive such calls from the Telemarketing Agent.  Despite being on notice that the Telemarketing Agent is placing calls in violation of the TCPA, Defendant has not taken steps to cease such actions as permitted through its contract with the Telemarketing Agent and thus ratifies its conduct.  Plaintiff James specifically multiply informed Defendant that the calls placed by the Telemarketing Agent were unwanted and yet did nothing to stop such calls to Plaintiff James.

62.     James alleges that Defendant is vicariously liable for the call to James through an agency-principle relationship, as well as through apparent authority and ratification.  See *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019).

63.     The Telemarketing Agent used a prerecorded vioce to place its call to James seeking to solicit Defendant's services.

---

THIRD AMENDED CLASS ACTION COMPLAINT

64.    The Telemarketing Agent's calls constituted calls that were not for emergency purposes as defined by *47 U.S.C. § 227(b)(1)(A)*.

65.    The Telemarketing Agent's calls were placed to telephone number assigned to a telephone service for which James incurs a charge for incoming calls pursuant to *47 U.S.C. § 227(b)(1)*.

66.    During all relevant times, neither Defendant nor the Telemarketing agent possessed James's "prior express consent" to receive calls using an automatic telephone dialing system on his cellular telephone pursuant to *47 U.S.C. § 227(b)(1)(A)*.

67.    Further, James's landline telephone number has been on the National Do-Not-Call Registry since at least 2006.

68.    The Telemarketing Agent placed multiple calls soliciting Defendant's business to James on his landline telephone on or around February 2020.

69.    Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

70.    James received multiple solicitation calls from the Telemarketing Agent within a 12-month period.

71.    The Telemarketing Agent continued to call James in an attempt to solicit Defendant's services and in violation of the National Do-Not-Call provisions of the TCPA.

72.    Upon information and belief, and based on James's experiences of being called by the Telemarketing Agent after being on the National Do-Not-Call list for several years prior to the Telemarketing Agent's initial call, and at all relevant times, the Telemarketing Agent failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5).

---

THIRD AMENDED CLASS ACTION COMPLAINT

## CLASS ALLEGATIONS

73. Plaintiffs bring this action individually and on behalf of all others similarly situated, as a member the three proposed classes (hereafter, jointly, "The Classes").

> All persons within the United States who received any solicitation/telemarketing telephone calls from the Telemarketing Agent pursuant to its contract with Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

74. The class concerning the National Do-Not-Call violation (hereafter "The DNC Class") is defined as follows:

> All persons within the United States registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendant or the Telemarketing agent prior express consent nor had a prior established business relationship, who received more than one call made by the Telemarketing Agent pursuant to its contract with Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint.

75. The class concerning the ATDS claim for no prior express consent while using a prerecorded voice (hereafter "The ATDS Landline Class") is defined as follows:

> All persons within the United States who received any solicitation/telemarketing telephone calls from the Telemarketing Agent pursuant to its contract with Defendant to said person's landline telephone made through the use of an artificial or prerecorded voice and such person had not previously consented to receiving

such calls within the four years prior to the filing of this Complaint.

76.    Plaintiffs Winters and Brem represent, and are members of, The ATDS Class, consisting of all persons within the United States who received any telemarketing telephone calls contract with Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

77.    Plaintiffs Winters and James represent, and are members of, The DNC Class, consisting of all persons within the United States registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendant or the Telemarketing agent prior express consent nor had a prior established business relationship, who received more than one call made by the Telemarketing Agent pursuant to its contract with Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint..

78.    Plaintiff James represents, and is a members of, The ATDS Landline Class, consisting of all persons within the United States who received any telemarketing telephone calls from the Telemarketing Agent pursuant to its contract with Defendant to said person's landline telephone made through the use of an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

79.    Defendant, including its employees and agents, is excluded from The Classes.  Plaintiffs do not know the number of members in The Classes, but believes the Class members number in the thousands, if not more.  Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

80.    The Classes are so numerous that the individual joinder of all of its

members is impractical. While the exact number and identities of The Class members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe and thereon allege that The Classes includes thousands of members. Plaintiffs allege that The Class members may be ascertained by the records maintained by Defendant.

81. Plaintiffs and members of The ATDS Class were harmed by the acts of Defendant in at least the following ways: Defendant through its agent the Telemarketing Agent illegally contacted Plaintiffs Winters and Brem and ATDS Class members via their cellular telephones thereby causing Plaintiffs Winters and Brem and ATDS Class members to incur certain charges or reduced telephone time for which Plaintiffs Winters and Brem and ATDS Class members had previously paid by having to retrieve or administer messages left by the Telemarketing Agent during those illegal calls, and invading the privacy of said Plaintiffs and ATDS Class members.

82. Common questions of fact and law exist as to all members of The ATDS Class which predominate over any questions affecting only individual members of The ATDS Class. These common legal and factual questions, which do not vary between ATDS Class members, and which may be determined without reference to the individual circumstances of any ATDS Class members, include, but are not limited to, the following:

a. Whether, within the four years prior to the filing of this Complaint, Defendant through its agent the Telemarketing Agent made any telemarketing/solicitation call (other than a call made for emergency purposes or made with the prior express consent of the called party) to an ATDS Class member using any automatic telephone dialing system or any artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

b.  Whether Plaintiffs Winters and Brem and the ATDS Class members were damaged thereby, and the extent of damages for such violation; and

c.  Whether Defendant should be enjoined from engaging in such conduct in the future.

83.  As a person that received numerous telemarketing/solicitation calls from Defendant through its agent the Telemarketing Agent using an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiffs' prior express consent, Plaintiffs Winters and Brem are asserting claims that are typical of The ATDS Class.

84.  Plaintiffs and members of The DNC Class were harmed by the acts of Defendant in at least the following ways: Defendant through its agent the Telemarketing Agent illegally contacted Plaintiffs and DNC Class members via their telephones for solicitation purposes, thereby invading the privacy of said Plaintiffs and the DNC Class members whose telephone numbers were on the National Do-Not-Call Registry.  Plaintiffs and the DNC Class members were damaged thereby.

85.  Common questions of fact and law exist as to all members of The DNC Class which predominate over any questions affecting only individual members of The DNC Class.  These common legal and factual questions, which do not vary between DNC Class members, and which may be determined without reference to the individual circumstances of any DNC Class members, include, but are not limited to, the following:

a.  Whether, within the four years prior to the filing of this Complaint, Defendant through its agent the Telemarketing Agent placed more than one solicitation call to the members of the DNC Class whose telephone numbers were on the National Do-Not-Call Registry and who had not granted prior

express consent to Defendant or the Telemarketing Agent and did not have an established business relationship with Defendant or the Telemarketing Agent;

b.  Whether Defendant or the Telemarketing Agent obtained prior express written consent to place solicitation calls to Plaintiffs Winters and James or the DNC Class members' telephones;

c.  Whether Plaintiffs Winters and James and the DNC Class member were damaged thereby, and the extent of damages for such violation; and

d.  Whether Defendant should be enjoined from engaging in such conduct in the future.

86.  As a person that received numerous solicitation calls from Defendant through its agent the Telemarketing Agent within a 12-month period, who had not granted Defendant or the Telemarketing Agent prior express consent and did not have an established business relationship with Defendant or the Telemarketing Agent, Plaintiffs Winters and James are asserting claims that are typical of the DNC Class.

87.  Plaintiff James and members of The ATDS Landline Class were harmed by the acts of Defendant in at least the following ways: through its agent the Telemarketing Agent Defendant illegally contacted Plaintiff James and ATDS Class members via their landline telephones thereby causing Plaintiff James and ATDS Class members to incur certain charges or reduced telephone time for which Plaintiff James and ATDS Class members had previously paid by having to retrieve or administer messages left by Defendant through its agent the Telemarketing Agent during those illegal calls, and invading the privacy of said Plaintiff and ATDS Class members.

88.  Common questions of fact and law exist as to all members of The ATDS Class, which predominate over any questions affecting only individual

members of The ATDS Class.  These common legal and factual questions, which do not vary between ATDS Class members, and which may be determined without reference to the individual circumstances of any ATDS Class members, include, but are not limited to, the following:

     a.   Whether, within the four years prior to the filing of this Complaint, Defendant through its agent the Telemarketing Agent made any telemarketing/solicitation call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a ATDS Class member using any automatic telephone dialing system or any artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

     b.   Whether Plaintiff James and the ATDS Landline Class members were damaged thereby, and the extent of damages for such violation; and

     c.   Whether Defendant should be enjoined from engaging in such conduct in the future.

89.   As a person that received numerous telemarketing/solicitation calls from Defendant through its agent the Telemarketing Agent using an artificial or prerecorded voice, without Plaintiff James's prior express consent, Plaintiff James is asserting claims that are typical of The ATDS Class.

90.   Plaintiffs will fairly and adequately protect the interests of the members of The Classes. Plaintiffs have retained attorneys experienced in the prosecution of class actions.

91.   A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Classes members is impracticable.  Even if every Classes member could afford individual litigation, the court system could not.  It would be unduly

burdensome to the courts in which individual litigation of numerous issues would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

92.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

93.    Defendant has acted or refused to act in respects generally applicable to The Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §227(b).

### On Behalf of the ATDS Class and ATDS Landline Class

94.    Plaintiffs repeat and incorporate by reference into this cause of action the allegations set forth in the paragraphs above.

95.    The foregoing acts and omissions of Defendant and its agent through its agent the Telemarketing Agent constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(b)*, and in particular *47 U.S.C. § 227 (b)(1)(A)*.

96.    As a result of Defendant's and its agent through its agent the Telemarketing Agent's negligent violations of *47 U.S.C. § 227(b)*, Plaintiffs and

the Class Members are entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B)*.

97. Plaintiffs and the ATDS Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**

**47 U.S.C. §227(b)**

**On Behalf of the ATDS Class and ATDS Landline Class**

98. Plaintiffs repeat and incorporate by reference into this cause of action the allegations set forth in the paragraphs above.

99. The foregoing acts and omissions of Defendant and its agent through its agent the Telemarketing Agent constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(b)*, and in particular *47 U.S.C. § 227 (b)(1)(A)*.

100. As a result of Defendant's and its agent through its agent the Telemarketing Agent's knowing and/or willful violations of *47 U.S.C. § 227(b)*, Plaintiffs and the ATDS Class members are entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B)* and *47 U.S.C. § 227(b)(3)(C)*.

101. Plaintiffs and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION

**Negligent Violations of the Telephone Consumer Protection Act**

**47 U.S.C. §227(c)**

**On Behalf of the DNC Class**

102. Plaintiffs Winters and James repeat and incorporate by reference into

1    this cause of action the allegations set forth in the paragraphs above.

2        103.   The foregoing acts and omissions of Defendant and its agent through

3    its agent the Telemarketing Agent constitutes numerous and multiple negligent

4    violations of the TCPA, including but not limited to each and every one of the

5    above cited provisions of *47 U.S.C. § 227(c)*, and in particular *47 U.S.C. § 227*

6    *(c)(5)*.

7        104.   As a result of Defendant's and its agent through its agent the

8    Telemarketing Agent's negligent violations of *47 U.S.C. § 227(c)*, Plaintiffs

9    Winters and James and the DNC Class Members are entitled an award of $500.00

10   in statutory damages, for each and every violation, pursuant to *47 U.S.C. §*

11   *227(c)(5)(B)*.

12       105.   Plaintiffs Winters and James and the DNC Class members are also

13   entitled to and seek injunctive relief prohibiting such conduct in the future.

**FOURTH CAUSE OF ACTION**

14

15   **Knowing and/or Willful Violations of the Telephone Consumer Protection**

16                                          **Act**

17                          **47 U.S.C. §227 et seq.**

18                      **On Behalf of the DNC Class**

19       106.   Plaintiffs Winters and James repeat and incorporates by reference

20   into this cause of action the allegations set forth in the paragraphs above.

21       107.   The foregoing acts and omissions of Defendant and its agent through

22   its agent the Telemarketing Agent constitutes numerous and multiple knowing

23   and/or willful violations of the TCPA, including but not limited to each and every

24   one of the above cited provisions of *47 U.S.C. § 227(c)*, in particular *47 U.S.C. §*

25   *227 (c)(5)*.

26       108.   As a result of Defendant's and its agent through its agent the

27   Telemarketing Agent's knowing and/or willful violations of *47 U.S.C. § 227(c)*,

28   Plaintiffs Winters and James and the DNC Class members are entitled an award

---

of \$1,500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(c)(5)*.

109.   Plaintiffs Winters and James and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendant for the following:

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b)

- As a result of Defendant's and its agent through its agent the Telemarketing Agent's negligent violations of *47 U.S.C. §227(b)(1)*, Plaintiff and the ATDS Class members are entitled to and request \$500 in statutory damages, for each and every violation, pursuant to *47 U.S.C. 227(b)(3)(B)*.
- Any and all other relief that the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b)

- As a result of Defendant's and its agent through its agent the Telemarketing Agent's willful and/or knowing violations of *47 U.S.C. §227(b)(1)*, Plaintiff and the ATDS Class members are entitled to and request treble damages, as provided by statute, up to \$1,500, for each and every violation, pursuant to *47 U.S.C. §227(b)(3)(B)* and *47 U.S.C. §227(b)(3)(C)*.
- Any and all other relief that the Court deems just and proper.

## THIRD CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(c)

- As a result of Defendant's and its agent through its agent the Telemarketing Agent's negligent violations of *47 U.S.C. §227(c)(5),* Plaintiffs Winters and James and the DNC Class members are entitled to and request $500 in statutory damages, for each and every violation, pursuant to *47 U.S.C.  227(c)(5).*

- Any and all other relief that the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(c)

- As a result of Defendant's and its agent through its agent the Telemarketing Agent's willful and/or knowing violations of *47 U.S.C. §227(c)(5)*, Plaintiffs Winters and James and the DNC Class members are entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to *47 U.S.C. §227(c)(5).*

- Any and all other relief that the Court deems just and proper.

///
///
///
///
///
///
///
///

1

## **JURY DEMAND**

2    110.    Pursuant to the Seventh Amendment to the Constitution of the

3  United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

4

5

6    Respectfully Submitted this 15th Day of March, 2021.

7

8                    **Kazerouni Law Group, APC**

9    By: /s/ Ryan L. McBride

10                        Ryan L. McBride, Esq.
                         *Counsel for Plaintiffs and the Proposed*
11                       *Classes*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED CLASS ACTION COMPLAINT