SHARON A. URIAS (SBN 016970)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ 85255
Tel. 602.726.0711
Fax 480.306.5459
Email: sharon.urias@gmlaw.com
       azdocket@gmlaw.com

JEFFREY A. BACKMAN (admitted *pro hac vice*)
ROY TAUB (admitted *pro hac vice*)
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel. 954.491.1120
Fax 954.213.0140
Email: jeffrey.backman@gmlaw.com
       roy.taub@gmlaw.com
       khia.joseph@gmlaw.com
       cheryl.cochran@gmlaw.com

*Attorneys for Defendant Grand Caribbean Cruises, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Winters, Jr. Joseph Brem, and David James, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>v.<br><br>Grand Caribbean Cruises Incorporated,<br><br>                  Defendant. | No. 2:20-cv-00168-DWL<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** |

Defendant Grand Caribbean Cruises, Inc. ("GCC") hereby moves, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss Plaintiffs Richard Winters, Jr., Joseph Brem, and David James's Third Amended Complaint (Dkt. No. 32), (the "TAC") with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

This Court dismissed Plaintiffs' Second Amended Complaint (the "SAC") primarily because Plaintiffs' definition of "Defendant" "made it impossible to analyze the extent to which Grand Caribbean may have had an agency relationship with another entity that could subject it to specific personal jurisdiction." Dkt. No. 30 at 9-10. The Court explained that the "[m]ost important" deficiency was that "Plaintiffs do not allege any facts showing that Grand Caribbean had the right to substantially control its agent's activities, which is a fundamental tenet of an agency relationship." *Id*. at 10 (internal quotation and brackets omitted). The Court instructed Plaintiffs that, to avoid dismissal, they must "provid[e] specific, non-conclusory allegations concerning the nature of the agency relationship between the defendant and the caller and the defendant's control over the caller's activities." *Id.* at 12.

Far from providing specific, non-conclusory allegations, Plaintiffs' TAC presents generic, fact-free statements about a conjured up caller. Gone are the "word salad" allegations that concealed who did what by use of "Defendant(s)," but they are replaced with wholly contrived, unsupported, unexplained, and thus implausible allegations about a single, unidentified caller who made different types of telephone calls to all three Plaintiffs – the so-called "Telemarketing Agent" who makes his first appearance in the *fourth* complaint in this case (even though Plaintiffs allege they have confirmed that is who called them).

In opposing the motion to dismiss the SAC, Plaintiffs posited that "[i]t is . . . obvious that some agreement existed between Defendant and its agents regarding the placing of calls and transfer of those calls to Defendant." Dkt. No. 20 at 10. As GCC detailed, a contractual relationship is not necessarily, and does not plausibly state, an agency relationship. But to fill in the gaps identified by the Court in dismissing the SAC, Plaintiffs have gone from speculating about the "obvious" existence of an agreement (with multiple agents) to now asserting as fact,

although through numerous conclusory, nonspecific, unsupported allegations, a contract and a relationship with just one agent, the "Telemarketing Agent." Now Plaintiffs allege that an unidentified contract they previously could only speculate about between GCC and the "Telemarketing Agent" contains terms "supporting" an agency relationship because GCC had

> the right to substantially control the Telemarketing Agent's actions, including by specifying the nature and type of the calls to be placed, the means by which such calls were to be placed, the content of such calls, and by retaining the right to terminate the contract unilaterally to enforce its control over the Telemarketing Agent.

TAC at ¶¶ 14, 36, 59. But satisfying the pleading standards requires more than repeatedly intoning certain "buzz words" – "control," "knowledge," "ratified," "authorized," etc. Well-pleaded factual support for such statements are required to render them and any claim plausible. While the TAC contains "allegations concerning the nature of the agency relationship between the defendant and the caller and the defendant's control over the caller's activities," by no means are they "specific" and "non-conclusory" as required to constitute well-pleaded allegations of fact. Dkt. No. 30 at 12. Thus, while the TAC postulates a "Telemarketing Agent" as the one person who called all Plaintiffs – something they allege they "confirmed," when they never confirmed one caller before, and it is unclear what that means when the "Telemarketing Agent" is unidentified and no more than a construct – the TAC plainly grasps at straws to try to render plausible the deficient allegations that still require dismissal.

With respect to personal jurisdiction, the TAC maintains Plaintiffs' concession that general personal jurisdiction is unavailable, and thus Plaintiffs must rely upon specific personal jurisdiction. Yet, Plaintiff James is not an Arizona resident, and he complains about telephone calls he claims to have received on his residential landline in California, which have no connection to this forum. The same is true with the claims of the non-Arizona putative class members, and they, too, should be dismissed for lack of personal jurisdiction. And specific jurisdiction is lacking for the remaining Plaintiffs, Winters and Brem, because nothing in the TAC plausibly suggests a *prima facie* showing that the Court has specific jurisdiction over GCC through an agent's contacts, and certainly not in response to GCC's sworn testimony.

Even if there were personal jurisdiction, the TAC still fails to allege facts sufficient to state a plausible claim against GCC. The TAC remains devoid of any well-pleaded facts that would permit a plausible inference that GCC issue or authorized and controlled an agent to place telephone calls in violation of the TCPA, as opposed to hiring a contractor (or that contractor itself hired a contractor without GCC's knowledge). The TAC also fails to state facts sufficient to plausibly suggest use of an automatic telephone dialing system ("ATDS") as to Brem or a prerecorded voice (separate violations) to any Plaintiff. There are yet additional pleading deficiencies that preclude Winters from stating a violation of the "do-not-call" rules, and none of the Plaintiffs alleges facts sufficient to plausibly state that anyone knowingly or willfully, as opposed to negligently, violated the TCPA. All of Plaintiffs' claims should be dismissed.

## ARGUMENT

### I.   APPLICABLE LEGAL STANDARDS

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). *See also Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). A "nonspecific conclusory statement is not enough" to satisfy that burden. *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). "[P]laintiff cannot simply rest on the bare allegations of its complaint," but must make at least "a *prima facie* showing of jurisdictional facts" to avoid dismissal under Federal Rule of Civil Procedure 12(b)(2). *Schwarzenegger*, 374 F.3d at 800. The Court may consider written materials in deciding the motion. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). The law of the forum state applies. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). Because "the jurisdictional limit of [Arizona's] long-arm statute is coextensive with that of the United States Constitution," "the Court need only determine whether exercising personal jurisdiction here would comport with federal due process." *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. CV-19-04854-PHX-DWL, 2020 WL 4039119, *3 (D. Ariz. July 17, 2020).

"[T]o survive a motion to dismiss" under Rule 12(b)(6), "a party must allege 'sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER GCC

### A.   The Court Lacks General Personal Jurisdiction

Plaintiffs have already conceded that Grand Caribbean is not subject to general jurisdiction in Arizona. *See* Dkt. No. 20 at 13 n.13. The TAC does not allege otherwise.

### B.   The Court Lacks Specific Personal Jurisdiction

Specific jurisdiction permits a court to hear a particular case that arises out of or relates to the defendant's contacts with the forum. *Daimler*, 571 U.S. at 127. It has three elements:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. None exists here.

#### 1.   There Is No Specific Personal Jurisdiction over James's Claims

First, the Court lacks personal jurisdiction over James's claims. He lives in California and received the telephone calls he complains about in California, as he claims they were to his landline telephone number. *See* TAC at ¶¶ 7 & 51. Specific personal jurisdiction, however,

-4-

requires that there "must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). "[T]he overwhelming majority of federal courts that have considered it . . . have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions," such as James. *Goldstein v. Gen. Motors LLC*, No. 3:19-CV-01778-H-AHG, 2020 WL 1849659, *4 (S.D. Cal. Apr. 13, 2020). James therefore lacks the necessary "connection between the forum and the specific claims at issue." *Bristol-Myers*, 137 S. Ct. at 1781.

### 2. There Is No Specific Personal Jurisdiction over Non-Arizona Claims

The Court also lacks specific personal jurisdiction over non-Arizona class members, on whose behalf Plaintiffs seek to assert TCPA claims by nationwide classes. There is no connection between Arizona and the individual TCPA claims of non-Arizona putative class members. Those putative class members' claims would rely wholly on conduct and claimed injuries that took place outside the State of Arizona and with no connection to it. Consistent with the ruling in *Bristol-Myers*, the mere fact that some Arizona resident plaintiffs allege receipt of telephone calls in violation of the TCPA "does not allow the State to assert specific jurisdiction over the nonresidents' claims." 137 S. Ct. at 1781.

Although *Bristol-Myers* did not concern a Rule 23 class action, and the Supreme Court and Ninth Circuit have yet to decide this issue, this Court should join others that have found the Supreme Court's analysis of specific personal jurisdiction applies to Rule 23 class actions as well. One court in the Ninth Circuit recently explained, based upon a review of the case law, that "the rationale for the holding in *Bristol-Myers Squibb* indicates that if and when the Supreme Court is presented with the question, it will also hold that a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims." *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020). Similarly, another court in this District explained its transfer of a putative class action by observing, given *Bristol-Myers*, that "it lacks personal jurisdiction over the claims of putative class members with no connection to

Arizona and therefore would not be able to certify a nationwide class." *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, *4 n.4 (D. Ariz. Oct. 2, 2017). The same is true here. The Court lacks personal jurisdiction over the claims of non-Arizona putative class members, and must dismiss those claims, too.

### 3. There Is No Specific Personal Jurisdiction Over GCC

It is black letter law that the "'minimum contacts' necessary to create specific jurisdiction . . . . must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (collecting cases).

"For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)). The same level of allegations sufficient to state liability under an agency theory are required to show personal jurisdiction on that basis. *See Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *13 (N.D. Cal. Dec. 4, 2017) ("*TranzVia*").

GCC did not place or make any telephone calls to the Plaintiffs, including Winters and Brem in Arizona. *See* Poole Decl. at ¶ 15. And the TAC does not appear to base any of the claims on such direct liability. Instead, it alleges that GCC is vicariously liable for telephone calls made by the same, albeit unidentified, "Telemarketing Agent." *See, e.g.,* TAC at ¶ 3. Under that approach, each Plaintiff is required to "show[ ] that [the Telemarketing Agent] is subject to this court's jurisdiction, and that [the Telemarketing Agent's] actions are attributable to [GCC] because [the caller] was [GCC's] agent with respect to the calls that [the caller] allegedly made to plaintiff." *TranzVia*, 2017 WL 5992123 at *10. That is because "[i]t is only when the acts of an agent can be imputed to the principal that the court can exercise personal jurisdiction over the principal for those acts." *Id.* (citing *Wells Fargo & Co. v. Wells Fargo*

*Express Co.*, 556 F.2d 406, 414 (9th Cir. 1977)). But the TAC is entirely devoid of well-pleaded facts sufficient to plausibly state an agency relationship between GCC and the nebulous "Telemarketing Agent" so as to permit imputation of "its" jurisdictional contacts to GCC.

The Ninth Circuit has recognized that the TCPA "incorporate[s] federal common law agency principles of vicarious liability . . . ." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013)). *See also Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) ("A defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it."). These common law agency principles "includ[e] not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 F.C.C. Rcd. at 6584. *See also Abante*, 2018 WL 288055 at *4 (same). Nothing in the TAC comes close to plausibly stating an agency relationship, as opposed to a standard contractor relationship, between GCC and the fabled "Telemarketing Agent" under these principles.

### a. Formal Agency

With respect to formal or actual agency, "[a]n agent is one who 'act[s] on the principal's behalf and subject to the principal's control.'" *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) (quoting *Restatement (Third) of Agency* § 1.01 (2006)). "Generally, an individual acting as an 'independent contractor,' rather than an agent, does not have the traditional agency relationship with the principal necessary for vicarious liability." *TranzVia*, 2017 WL 5992123 at *12. Plaintiffs attempt to allege the elements of formal agency, but the conclusory and nonspecific nature of the allegations evidence that they fail to plausibly allege formal agency.

First, no actual "Telemarketing Agent" is identified. Plaintiffs' generic conception of the "Telemarketing Agent" is simply a placeholder to try to allege the slenderest of reeds for an essential component of agency, an agent. Even though Plaintiffs know the telephone number that called them, they never provide an identity for the caller, let alone any reason to believe the same Telemarketing Agent called each of them using different types of telephone calls.[1]

---

[1] Winters alleges he received several telephone calls in July 2019, that they came from a telephone number with a 480 area code, and he believes "most if not all" were made using an

Curiously, Winters and Brem alleged the telephone number that called them is "confirmed to be its [the Telemarketing Agents'] number." TAC at ¶¶ 19 & 41. But that allegation has no meaning when it is being made about an unidentified, seemingly fictional person introduced on the fourth complaint to address the Court's "word salad" criticism. What exactly has been confirmed? That a number belongs to a phantom caller? Even more head-scratching is that Winters previously alleged that the telephone number was "confirmed to be Defendant's number," (SAC at ¶ 15), while Brem made the even less meaningful allegation that the telephone number that called him "was later confirmed to be Defendant and/or Defendant's agent's number." *Id.* at ¶ 5* (emphasis added). Now it's the Telemarketing Agent's!

In addition to being unable to allege any specific facts about the Telemarketing Agent, Plaintiffs also allege no specific, non-conclusory facts about the alleged relationship it has with GCC. Plaintiffs instead recite in conclusory terms and threadbare fashion, without any specific facts, that GCC has a contract with this "Telemarketing Agent," which, even though Plaintiffs openly speculated it had to exist and do not allege they have ever seen its terms, claim it establishes several elements or factors required for formal agency applies, such as:

- "Pursuant to the contract, the Telemarketing Agent was to place calls using an automatic telephone dialing system or a prerecorded voice to consumers,";
- "the Telemarketing Agent was acting with the express of authority of Defendant in placing" each of the calls to Plaintiffs, each of which "was placed directly pursuant to the contract between Defendant and the Telemarketing Agent,"; and
- "[p]ursuant to the contract, Defendant maintained the right to substantially control the Telemarketing Agent's actions," including the means and methods of placing the

---

ATDS because there was "a beep or a pause" before a person "came on the line." TAC at ¶¶ 19 & 24. Brem alleges none of that, but rather that he received only one telephone call in August 2019 from a telephone number with a 602 area code, which he previously contended was "spoofed," and, in yet another difference from Winters, claims he was asked several questions (by what "appeared to be a prerecorded voice"), and was then transferred to an alleged representative of GCC. SAC at ¶ 5*; TAC at ¶¶ 29 & 30. Winters never alleged a prerecorded voice was used on any of his calls. James, however, presents a third, different set of facts. He alleges he was called multiple times, but six or seven months later, in February 2020, from a telephone number with a 714 area code, and heard prerecorded voices. TAC at ¶¶ 51-54.

-8-

telephone calls and having the right to unilaterally terminate contract."
TAC at ¶¶ 11-15, 33-37, 57-60.

From open speculation of the "obvious" existence of "some agreement" to bald allegations of purported terms of such an agreement. Plaintiffs never allege any well-pleaded facts sufficient to render these allegations, which are being made for the first time on the fourth attempt, even remotely plausible. Courts do not accept conclusory and naked assertions of authorization and control, completely lacking in any factual enhancement and an explanation as to how Plaintiff could know such facts, as sufficient and plausible to allow a court to draw the reasonable inference of the existence of an agency relationship, as opposed to a standard contractual relationship. All Plaintiffs have offered is a fable that the same unidentified person called all three of them and the same sparse, conclusory allegations about a contract that Plaintiffs openly speculated had to exist in order to satisfy a checklist – it is too obvious a contrivance to make the same factual allegations about the terms of different agreements with multiple agents, so they are made about only one mystery caller operating under one contract. What Plaintiffs allege here effectively could be alleged about anybody. Far more is required to state a **plausible** claim. As another court wrote about the "instructive" *TranzVia* ruling, which applies with equal force here:

> There, the plaintiff alleged he had received a call from a telemarketer which violated the TCPA. 2017 WL 5992123. The plaintiff alleged that the defendant had hired the telemarketer, a third-party, to act as its agent in marketing its payment services. He alleged that the defendant "had control over [the third-party's] actions on its behalf," "limited the types of business [the telemarketer] could solicit," "restricted the geography within which [the telemarketer] could promote [the defendant's business]," "decided whether . . . it would accept a customer from [the telemarketer]," "instructed [the telemarketer] with respect to the volume of calling," and "had day-to-day control over [the telemarketer's] actions." *Id.* at *11. The court found these allegations, which the plaintiff asserted showed that defendant had control over the telemarketer's actions on its behalf, were insufficient to demonstrate that the plaintiff had "'had control over'" the telemarketer's actions and thus were insufficient to demonstrate a plausible claim for relief based on vicarious liability. *Id.* ***The court reasoned that the allegations, "without any facts showing how [defendant] did those things or how it knew those things, or what facts the allegations are based on – are not facts that allow***

>    ***the court to draw the reasonable inference that [defendant] is vicariously liable for [the telemarketer's] alleged misconduct.*** " *Id.* . . . . Here, [Plaintiffs] similarly ha[ve] not alleged any facts that support the inference that [Grand Caribbean] exercised any control over [the "Telemarketing Agent"] or [its] marketing . . . .

*Rogers v. Postmates Inc.*, No. 19-cv-05619, 2020 WL 3869191, *4 (N.D. Cal. July 9, 2020) ("*Rogers II*") (emphasis added).[2] And in *TranzVia* the purported agent at least was identified by name and its role in a series of relationships was placed in context by the plaintiff, and not simply conjured.

Thus, as previously argued, Plaintiffs still state no facts plausibly suggesting that GCC "controlled or had the right to control [the purported agents] and, more specifically, the manner and means of the [marketing] . . . they conducted," which is necessary for actual agency. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014). Nor can Plaintiffs plausibly base formal agency upon the allegation that they were "transferred to a representative who identified Defendant by name and was clearly made for the benefit of Defendant." TAC at ¶¶ 15, 37, 60. "It is not enough that each representative identified him or herself as acting on behalf of [GCC]. Such allegations say nothing about whether defendant consented to those representations. And, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the

---

[2] *See also, e.g., Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, *5–7 (N.D. Cal. Mar. 20, 2019) (finding allegations that "Youngevity 'allows' employees and agents like Cordell to market loans through DAC by making autodialed and prerecorded calls to non-customers; that Cordell 'had the actual authority of Youngevity to make the complained-of calls'; and that Cordell 'was an authorized agent of Youngevity when he made the call'" to be "too general and conclusory"); *Ewing v. Encor Solar, LLC*, No. 18-CV-2247-CAB-MDD, 2019 WL 277386, *7 (S.D. Cal. Jan. 22, 2019) (holding allegations that "Sunrun had exercised control over [two purported agents], expressly told them what to do, and that each of the calls were made on behalf of Sunrun, identifying Sunrun as the 'principal' . . . . insufficient to establish vicarious liability"); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, *7 & n.13 (S.D.N.Y. Nov. 30, 2015) ("Plaintiffs seem to suggest that the allegations that Experian 'had the right to control the sending of the texts' and 'in fact controlled and even scheduled the sending of each segment of the texts' are sufficient to plead Experian's vicarious liability for Archer's actions. . . . But to plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiffs must allege *some* facts regarding the relationship between an alleged principal and agent . . . .").

representatives." *Abante*, 2018 WL 288055 at *5. *See also Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020) (same); *Rogers II*, 2020 WL 3869191 at *5 (finding allegations that company sent text messages on behalf of another failed to plausibly allege agency, as opposed to contractual relationship).

Moreover, as the specific jurisdictional contacts must provide the basis for actual agency for purposes of a TCPA claim, Plaintiffs "must do more than establish an agency relationship. They must also establish that the purported agent had actual authority to place the unlawful calls," *i.e.*, to place a telephone call using an ATDS or pre-recorded voice or in violation of the "do-not-call" rules. *Jones*, 887 F.3d at 449.[3] For the reasons set forth above, the TAC is devoid of any well-pleaded facts sufficient to render any such contention plausible.

In any event, even if Plaintiffs had made specific, well-pleaded allegations of fact, those could not survive GCC's sworn testimony that it "never authorized any third party to place or initiate a telephone call to any of the Plaintiffs that would violate the [TCPA]," and instead "requires that **all such companies** who seek to contract with Grand Caribbean represent and agree that their marketing activities will be in compliance with all applicable federal and state laws, including the TCPA." Poole Decl. at ¶ 16 (emphasis added). On this record, Plaintiffs' allegations cannot be credited. *See Canary*, 2019 WL 1275343 at *6 (rejecting allegation that defendant "allows" autodialed and prerecorded calls both as conclusory and because defendant's "Policies expressly prohibit telemarketing methods that would violate state or federal law").[4]

---

[3] *See also Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 4220075, *1 (D. Ariz. July 23, 2020) ("Plaintiff does not allege that Mr. Berube directed agents use an autodialer in any way that violates the TCPA."); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 1032153, *4 (N.D. Cal. Mar. 3, 2020) ("*Rogers I*") ("[E]ven if the sender was authorized to market on Postmates' behalf, there are no factual allegations suggesting that Postmates knew or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf.").

[4] *See also, e.g., Jones*, 887 F.3d at 449 (explaining contractual prohibition of "any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling,'" precluded finding of authority to place telephone calls in violation of the TCPA); *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077, *1 (N.D. Cal. Dec. 19, 2019) ("*Abante II*") (explaining unrebutted evidence that purported agent "repeatedly represented that its services were compliant with the TCPA"

The fact is that Grand Caribbean never authorized anyone to violate the TCPA or to call people who had not given consent to be called, bringing an end to any possible actual agency theory.

### b. Apparent Authority

Nor does the TAC contain any well-pleaded facts sufficient to permit a plausible inference of agency by apparent authority. "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when that belief is reasonable and is traceable to a manifestation of the principal." *TranzVia*, 2017 WL 5992123 at *12 (quoting *Restatement (Third) of Agency* § 2.03, cmt. c). "[T]he ostensible authority of an agent cannot be based solely upon the agent's conduct." C.*A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc*., 213 F.3d 474, 480 (9th Cir. 2000). On this agency theory, too, the TAC contains conclusory assertions, but lacks any well-pleaded allegations of conduct **by GCC** sufficient to render plausible and reasonable any belief by any Plaintiff that GCC authorized the so-called "Telemarketing Agent" to place telephone calls in violation of the TCPA as its agent, as opposed to a standard contractual relationship.[5]

Thus, the allegations that Plaintiffs were transferred on calls made by others to GCC remain insufficient to plausibly state apparent authority. It is black letter law that "[t]he fact that one party performs a service that facilitates the other's business does not constitute such a manifestation [of assent to action by the agent with legal consequences for the principal]." *Restatement (Third) Of Agency* § 3.03. "For example, by clearing securities trades for another firm, a securities broker does not make a manifestation to customers of the firm sending the

---

precluded plaintiff from showing defendant granted it "the authority to use an ATDS or to call merchants on the Do-Not-Call Registry").

[5] *See Abante*, 2018 WL 288055 at *5-6 (rejecting as insufficient allegations that defendant's agents called on defendant's behalf and promoted defendant's brand and products because "they assume an agency relationship exists in order to show defendant made a manifestation to a third party"); *TranzVia*, 2017 WL 5992123 at *7, 12-13 (finding allegation that defendant called plaintiff after plaintiff left voicemail in response to purported agent's calls insufficient to support apparent authority); *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, *7 (N.D. Cal. June 15, 2015) (finding allegation that purported agent "stated that the intention was to refer Plaintiff to Defendant" was insufficient because it did "not show that [defendant] controlled, authorized, or even knew about [purported agent's] phone calls or that [defendant] had any control over [purported agent]").

orders that it acts with the authority of the clearing firm." *Id.* The same is true with transferring calls. Plaintiffs thus have not alleged any facts that raise the claim of an agency relationship beyond the speculative level. At most, the TAC's allegations suggest a relationship between the purported callers and GCC, but "the bare existence of a relationship does not indicate that [the purported callers were] authorized to act on defendant's behalf or speak to the scope of that purported authorization." *Abante*, 2018 WL 288055 at *6.

### c. Ratification

Plaintiffs fare no better with ratification, which is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting *Restatement (Third) of Agency* § 4.01(1)). "Even if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.'" *Id.* (quoting *Restatement (Third) of Agency* § 4.01, cmt. b). Thus, to allege that GCC ratified the making of any "allegedly improper calls, plaintiff[s] must allege facts sufficient to allow the court to reasonably infer that [GCC] knew that [the Telemarketing Agent] violated the TCPA and that [GCC] 'knowingly' accepted the benefits of [the Telemarketing Agent's] violation." *TranzVia*, 2017 WL 5992123 at *13. No such facts are alleged in the TAC.

Plaintiffs once again advance only conclusory allegations. *See* TAC at ¶¶ 15-16, 37-38, 60-61. First, there is no asserted basis to infer there were any benefits – cruise ship bookings by Plaintiffs – to accept in the first place. Ratification is not possible under those circumstances. *Accord Kristensen*, 879 F.3d at 1014-15. Second, Plaintiffs' complete failure to allege or establish any agency relationship is also fatal to a ratification finding because, "[a]lthough a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 680 (9th Cir. 2014). *See also Kristensen*, 879 F.3d at 1015; *Abante*, 2018 WL 288055 at *6. Third, Plaintiffs' conclusory allegations that GCC knew or was on inquiry notice that the unidentified "Telemarketing Agent" was violating the TCPA because of

"complaints [GCC] receives from angry consumers who are transferred and speak to Defendant who inform it that they had not given consent to receive such calls," and yet proceeded to do business with it, are yet more conclusory and fact-free allegations that fail to plausibly suggest knowledge or notice. Just as Plaintiffs contrive one "Telemarketing Agent" as making all of the varied calls to them pursuant to an agreement the purportedly specific terms of which they also summon out of thin air, they contrive "angry consumers" who also received calls from the same "Telemarketing Agent" and, further, complained about their lack of consent to be called. The TAC lacks any well-pleaded allegations of fact sufficient to render these alleged conversations to which Plaintiffs were not party plausible (as opposed to conceivable). Tellingly, none of the Plaintiffs allege that *they* made any such statement to GCC.

### III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST GCC

Even if Plaintiffs were somehow to establish personal jurisdiction over GCC, the TAC still should be dismissed for failure to state a claim against GCC.

#### A. Plaintiffs Fail to Allege Vicarious Liability against GCC

For the reasons set forth in connection with the Rule 12(b)(2) motion (but without consideration of the Poole Declaration), the TAC falls far short of stating any plausible basis for the imposition of vicarious liability against GCC under an agency theory. *See* Section II.B.3, *supra*. There is no well-pleaded, non-conclusory allegation of any control or right of control over the means and manner of a purported agent's telemarketing. *See Rogers II*, 2020 WL 3869191 at *4. "To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent." *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, *3 (S.D. Cal. June 13, 2013).

Nor are there any well-pleaded facts that "the purported agent had actual authority to place the unlawful calls," *i.e.*, to place a telephone call using an ATDS or pre-recorded voice or in violation of the "do-not-call" rules. *Jones*, 887 F.3d at 449. *See also Declements*, 2020 WL 4220075 at *1 (dismissing TCPA claim where plaintiff failed to allege anyone "directed agents use an autodialer in any way that violates the TCPA"); *Rogers I*, 2020 WL 1032153 at *4 (dismissing TCPA claim where "there are no factual allegations suggesting that Postmates knew

or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf"). The TAC also fails to plausibly state agency – as opposed to an independent contractor relationship – under apparent authority or ratification of an agent's unauthorized acts for the reasons detailed above.

### B. Plaintiffs Fail to Allege a TCPA Violation

Even if Plaintiffs had somehow succeeded in stating a plausible basis for holding GCC vicariously liable, they still have failed to allege a TCPA violation by the unconsented (1) use of an ATDS; (2) use of a prerecorded voice; or (3) placing of calls to persons who registered their telephone numbers on the National Do-Not-Call Registry ("NDNCR").

#### 1. Brem and James Fail to Allege the Use of an ATDS

The TCPA prohibits the making of a telephone call "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which as the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1). *See also Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019), *cert. granted in part*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020).

Originally, Plaintiffs alleged only that "Defendant" "used an 'automatic telephone dialing system' as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff," an act they now attribute to the "Telemarketing Agent." TAC at ¶¶ 18 & 40.[6] Such an unadorned allegation of a legal conclusion without any factual support fails to plausibly state the use of an ATDS. *See Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, *4 (N.D. Cal. Mar. 24, 2016); *Freidman*, 2013 WL 3026641 at *2. In the TAC, while Winters alleges facts that courts have deemed sufficient to rise beyond a speculative level the use of an ATDS, (TAC at ¶ 24), Brem still does not. He bases the claimed use of an ATDS solely on the allegation that "[t]he use of a prerecorded voice tends to indicate an [ATDS] was used to call Brem." TAC at ¶ 30. That is insufficient indicia to plausibly allege the use of an ATDS. Setting aside for now the

---

[6] James no longer alleges that an ATDS was used on the calls he received. *See* SAC at ¶ 18*.

conclusory nature of the allegation that a prerecorded voice was used – discussed further below – an ATDS is a particular type of equipment. Whether or not a prerecorded voice is used is independent of whether an ATDS is used. A "prerecorded voice" call can be made by manual dialing or a dialing system that has sufficient human intervention so as to not qualify as an ATDS, and is not indicative of – and does not create a plausible inference of – use of an ATDS.

### 2. Plaintiffs Fail to Allege the Use of a Prerecorded Voice

The TCPA prohibits the use of prerecorded voices in certain telephone calls without the prior express consent of the called party. *See* 47 U.S.C. §§ 227(b)(1)(A) & (B). Here, too, Plaintiffs allege the use of a prerecorded voice in conclusory terms, without any factual amplification. *See* TAC at ¶¶ 30, 51, 52, 54, 63. "When a fact is itself an element of the claim, as is the case here [with use of a prerecorded voice], it is not sufficient to recite that fact verbatim without other supporting details." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012). Thus, "[i]t is not unreasonable . . . to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded . . . ." *Id.*[7] The TAC lacks any such factual allegations, and thus fails to state a plausible claim for use of a prerecorded voice.

### 3. Winters Fails to Allege "Do-Not-Call" Violations

The TCPA also established the NDNCR, and provided a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under" Section 227(c) of the TCPA. 47 U.S.C. § 227(c)(5). The relevant regulation, 47 C.F.R. § 64.1200(c), further provides that there will be no liability for a solicitation to a registered telephone number if the caller "employ[s] a version of the [NDNCR] obtained from the administrator of the registry no more than 31 days prior to the date any call is made . . . ." 47 C.F.R. § 64.1200(c)(2)(i)(D). Thus,

---

[7] *See also Kruskall v. Sallie Mae Servs. Inc.*, No. 15-cv-11780, 2016 WL 1056973, *3 (D. Mass. Mar. 14, 2016); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, *4 (N.D. Ohio Mar. 18, 2016); *Padilla v. Whetstone Partners, LLC*, No. 14-21079-CIV, 2014 WL 3418490, *2 (S.D. Fla. July 14, 2014); *Moore v. Online Info. Servs., Inc.*, No. 13-61167-CIV, 2014 WL 11696696, *2 (S.D. Fla. Jan. 10, 2014).

there is no liability under the TCPA for calling a telephone number that was registered less than 31 days before the date of the telephone call.[8]

Winters fails to state a "do-not-call" violation because he continues to allege that he did not register his cellular telephone number until "at least June 2019," (*id.* at ¶ 23), *i.e.*, the month before the calls that allegedly took place "in or around July 2019." *Id.* at ¶ 9. As in *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-CV-00200-LB, 2016 WL 1559717, *7 (N.D. Cal. Apr. 18, 2016), dismissal is appropriate because Winters "does not provide any factual allegations or evidentiary support that his number was, during the relevant time period, on the do-not-call list."[9] While conceivable, in the absence of specific dates, it is ***not plausible*** that the 31-day "safe harbor" period in the regulations had elapsed for two or more calls.

### C. Plaintiffs Fail to Allege GCC Willfully or Knowingly Violated the TCPA

In Counts II and IV, Plaintiffs assert claims against GCC for willful and knowing violations of the TCPA pursuant to 47 U.S.C. §§ 227(b)(3)(C) & (c)(5)(C). But, yet again, Plaintiffs have "failed to assert any facts that suggest that [GCC's] alleged TCPA violation was willful and knowing," and Counts II and IV should be dismissed. *McCullough v. Maximum Title Loans LLC*, No. CV-19-00717-PHX-JJT, 2019 WL 3933754, *3 (D. Ariz. Aug. 20, 2019).

### CONCLUSION

Plaintiffs' ***fourth*** attempt at stating TCPA claims should be their last. For the foregoing reasons, Defendant Grand Caribbean Cruises, Inc. respectfully requests that the Court enter an order dismissing Plaintiffs' Third Amended Complaint with prejudice, and granting any other relief the Court deems appropriate.

---

[8] That is why Plaintiffs' definition of the proposed "DNC Class" "consist[s] of all persons within the United States registered on the [NDNCR] for at least 30 days," albeit not 31 days, at the time they were called. TAC at ¶ 74.

[9] The claim in *Drew* was for violation of an "internal do-not-call list," but those TCPA regulations similarly provide for a 30-day safe harbor from the date of registration for such calls. *See* 47 C.F.R. § 64.1200(d)(5). Thus, where a plaintiff alleges that he requested to have his number added to an internal "do-not-call" list and still received multiple calls thereafter, but in the same month, he fails to state a claim. *See Orsatti v. Quicken Loans, Inc.*, No. 215CV09380SVWAGR, 2016 WL 7650574, *7 (C.D. Cal. Sept. 12, 2016).

**CERTIFICATION PURSUANT TO LRCiv 12.1(c)**

The undersigned hereby certifies that, in accordance with LRCiv 12.1(c), on March 23, 2021, Roy Taub, counsel for GCC, met and conferred with Ryan McBride, counsel for Plaintiffs, by telephone and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

DATED: March 29, 2021              Respectfully Submitted,

GREENSPOON MARDER LLP

Sharon A. Urias (SBN 016970)
8585 E. Hartford Drive, Suite 700
Scottsdale, AZ 85255
Tel. 602.726.0711
Fax 480.306.5459
sharon.urias@gmlaw.com
azdocket@gmlaw.com

 /s/ Roy Taub
Jeffrey A. Backman (admitted *pro hac vice*)
Roy Taub (admitted *pro hac vice*)
200 East Broward Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Tel. 954.491.1120
Fax 954.213.0140
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
khia.joseph@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendant*
*Grand Caribbean Cruises, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 29, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

                      */s/ Roy Taub*
                       ROY TAUB